Archibald C. Wemple, J.
Briefly, the facts are as follows: Ralph A. Spinney and Rachel Vose Spinney were married in 1942. David Allen Spinney was born on August 20, 1943 and Larry Raymond Spinney was born on August 30, 1946. The marriage between Rachel and Ralph continued until 1955. Then it was terminated by a divorce obtained by the husband upon the charge of adultery. She did not defend the action.
During the period of his first marriage, Ralph spent some time in the military service, acquired a G. I. education at the Bentley School of Accounting and, in 1953, entered the Glen-ridge Sanitarium for treatment of tuberculosis.
The evidence shows that Rachel was a faithful wife and a good mother. She visited her husband at the sanitarium and worked hard to provide for her family. Upon Ralph’s return home, Rachel is alleged to have refused to have marital relations and there was talk of “ another man.” Thereupon, her husband informed her that she must ‘ ‘ leave unless she could remain as a faithful wife and mother.” She left to make her home with friends and the divorce action ensued. The judgment dissolving the marriage between Ralph and Rachel provided that sole and entire care, custody and control of the infants of this marriage, namely David Allen Spinney and Larry Raymond Spinney, was given to the husband, Ralph, and gave the mother the right to visit said infants at a “ time mutually agreed upon between the parties,” which was to be at least once a month.
Ralph A. Spinney and the petitioner, Catherine J. Spinney, a Catholic, were married in a Protestant church on April 7, 1957. The petitioner proposes to adopt both children and agrees to bring them up as Protestants. In the case of David Allen Spinney, over 14, he also joins in the petition.
The petition is supported by Ralph A. Spinney, father, who states that he wants a united and secure home for his boys with his wife, <he petitioner, playing the role of mother. Rachel, the natural mother, opposes the petition.
There is evidence that Rachel has visited the children at occasional and irregular intervals since the divorce and she claims that she has experienced difficulty in visiting her children since the marriage of the father to the petitioner. However, she has sent gifts to, visited and, on occasion, shown some *589 concern for the physical welfare of her two boys since her divorce.
On the other hand, it appears that the petitioner has made herself an integral part of the home, providing for the needs and wants of David and Larry, preparing their meals, washing their clothes, seeing that they got to school and church. She has won the admiration and respect of her stepsons in 10 short months. Both boys at the hearing indicated that they wanted to be adopted by the petitioner, Catherine J. Spinney. They also indicated that they loved their mother, but felt secure, happy and contented in the present home relationship with the petitioner. This is a wonderful tribute to the petitioner and her husband.
The court appointed Mrs. Helena Rallen as investigator to look into the situation and report back. In summary, this report indicates that the investigator feels the welfare of each child would be promoted by the adoption requested herein.
The court is called upon in this petition to decide whether, from the evidence, the natural relationship of Rachel, as mother, and her two sons, should be severed, and, in its place, a new legal relationship of “ mother ” be created as to Catherine J. Spinney, petitioner, and David and Larry Spinney, as sons. The evidence has been weighed carefully. This is an important decision affecting the very lives and filial relationships of five human beings. Until these boys mature, a delicate balance between the children and their mother and their stepmother should be maintained.
Because of the divorce of Rachel Yose Spinney by Ralph A. Spinney, no consent by her to the adoption is required. However, she was entitled to notice as required by section 111 of the Domestic Relations Law. She has appeared and asked that the petition be denied in order to preserve her rights as a mother and natural parent. She has been heard and has informed the court of the circumstances surrounding her life as wife of Ralph and also the period following her divorce. She has given valuable aid on the question of the advisability of approving or denying this petition for adoption.
From the facts presented, the court is assured that the children are in good surroundings and receive excellent care from the petitioner. The court is satisfied, furthermore, that the actions of Rachel since the divorce do not spell out an abandonment by her of her two sons. She has continued a somewhat casual and intermittent relationship with her children. The court here quotes with approval — Matter of Fischer (127 *590 N. Y. S. 2d 423, 427) decided by Honorable Christopher McGrath, Surrogate of Bronx County, on January 26, 1954 — from which decision I quote the following: ‘ ‘ Only unequivocal and absolute abandonment by a parent of his child warrants the severance of blood ties.” And, also, the court herein quotes with approval the case of Matter of Farquharson (102 N. Y. S. 2d 230, 234) in which Surrogate Richardson, of Kings County, states the following from the case of Caruso v. Caruso (175 Misc. 290, 292-293): “ While promotion of the interests of the child is essential to approval of an adoption, the natural right of the parent will not be interfered with, even to better the moral and temporal welfare of the child, against the right of the unoffending parent.” In the present ease, all the facts presented fail to add up to abondonment of her sons by Rachel.
Moreover, there remains a mutual feeling of strong affection between the natural mother Rachel and her boys. This was shown at the hearing. The boys exhibited a spirit of loyalty and feeling for both the petitioner and their mother. There is insufficient evidence to justify the permanent termination of the mother-son relationship between Rachel and her sons. In Matter of Metzger (114 Misc. 313, 315) it is stated that divorce curtails but does not abrogate the rights of a mother, and I quote the following statement from this decision: “ The natural rights of the parent to his child are sacred and are jealously guarded by the law.”
The Supreme Court decree awarded custody of David and Larry to the father, with rights of visitation to the mother. This court cannot and will not interfere with a judgment of the Supreme Court which has fixed certain rights between the parties to that action in respect to the children of the marriage. To grant this petition would certainly affect materially the custody provision of the divorce decree.
The court is hopeful that the petitioner will continue the “ substitute ” mother role which she has ,so admirably undertaken. She has the opportunity to help mold the lives of young boys. She may, in the end, be “ adopted ” by them.
The petition of Catherine J. Spinney to adopt David Allen Spinney and Larry Raymond Spinney is hereby denied on the ground that the court is not satisfied that the moral and temporal interests of the foster children will be promoted thereby as required by section 114 of the Domestic Relations Law. This is the paramount consideration in any proceeding for adoption, having in mind, of course, the natural and legal rights of the parents of the children affected by said adoption.
Enter order accordingly.