Lott H. Wells, S.
This is a proceeding for the adoption of Cynthia Carol Widrick, born September 2,1946, Saranas Clayton Widrick, born January 22, 1948, and Sue Ellen Widrick, born January 2,1949, by Francis William Boney, the second husband of the mother. (Domestic Relations Law, § 110.) The mother, Elaine Widrick Boney is copetitioner. Francis William Boney and Elaine Widrick were married August 26; 1957. They have continued to reside together since their marriage, during all of which time the petitioner has provided for, supported and maintained the children. This is Francis William Boney’s first marriage. Saranas Widrick, the father of the children, has appeared and asked that the petition be denied in order to preserve his rights as father and natural parent. He has not remarried.
Elaine Tuttle and Saranas Widrick were married February 25, 1945. The marriage continued until December 4, 1951, when Elaine Widrick obtained an undefended divorce in the Supreme Court of this State on the ground of adultery. The decree of divorce awarded the custody of the children to the mother. The father was directed to pay $40 per week for the support of the mother and children from September 4, 1951, also all necessary, reasonable hospital, medical, surgical and dental expenses for the children with the right, if he makes the support payments regularly and promptly, to see the children each Sunday p.m. Also, an order was granted May 8, 1951 in St. Lawrence County Children’s Court on April 27, 1951 (petition by Elaine Widrick for nonsupport) which directed Saranas *1080 Widrick to pay $40 per week through the probation office. This amount was reduced to $35 by Children’s Court order of August 27, 1951. By July 10, 1956, such payments to the probation office amounted to $7,730. In another proceeding in St. Lawrence County Court, June 18, 1957, for failure to provide, the $35 weekly payment was continued. The last payment under this order was November 18, 1957, and as of November 26, 1957, Saranas .Widrick was $420 in arrears. The mother also testified the medical expenses of the children were paid by the St. Lawrence County Department of Social Welfare, and that it was necessary for her to apply for welfare assistance when the support payments were not made. Saranas Widrick (father) is a wounded veteran of World War II with disability from shrapnel wounds in the right thigh and cheek. These wounds have required some hospital treatment and kept him from work at feuch times. In 1955, the mother as legal custodian of the children, made application to the Veterans’ Administration and was awarded an apportioned share of his full rate of compensation. This is $16.73 a month for each child. She was informed by the Veterans’ Administration that “ if the children are adopted, only the additional amount authorized for dependents would be authorized for the children. If the Veterans’ rate of disability was reduced below 50% there would be no additional allowance payable for dependents. However, the apportionment would continue, if the children were not adopted, if the percentage disability continues to be 30% or more.” In 1956 from Thanksgiving, until Easter 1957, Elaine Widrick went back and lived with Saranas Widrick.
The court caused an investigation to be made by the St. Lawrence County Department of Social Welfare to examine into the allegations set forth in the petition and to ascertain such other facts relating to the foster children and foster parent as will give adequate basis for determining the propriety of approving the adoption (Domestic Relations Law, § 112, subd. 8). The report indicates: “we feel that these children are more secure in this home than they have ever been and that this adoption would be of benefit to them”. The children at the hearing indicated that they wanted to be adopted by the petitioner, Francis William Boney.
The court is called upon in this petition to decide whether from the evidence the natural relationship of Saranas Widrick as father, and his three children should be severed, and in its place a new legal relationship of “father ” be created as to Francis William Boney, stepfather. (Matter of Spinney, 9 Misc 2d 587 [1958].)
*1081 The consent of a parent who has been divorced .because of adultery is not required, although the parent shall be given notice of the proposed adoption. (Domestic Relations Law, §§ 111, 112, subd. 6; Matter of Geiger, 138 N. Y. S. 2d 410, 411 [1955]; Matter of Munsel, 160 Misc. 508 [1936].) “ The statute apparently recognizes that a divorced parent may not be one who has abandoned the child. In other words, a decree of divorce may direct the custody of the child to the mother, with the provision that the father pay for the child’s support. If the money is actually paid as directed by the judgment in the divorce action, it could not be held that the father has abandoned the child. Apparently, it was for this reason that the Legislature determined that the wrongful party in a divorce action should at least have notice.” (Matter of Munzel, supra, p. 510.) 1 ‘ Upon the return of the notice given under the statute, has the divorced parent the right to oppose the adoption * * *? I think he has. Otherwise the amendment of 1913 to section 111 of the Domestic Relations Law would be without reason or force * * *. The giving of notice to the divorced parent at least enables him to acquaint the Court with the absence of such benefits to the child, essential as they are, to enable the surrogate in his discretion to grant or deny the adoption.” (Matter of Metzger, 114 Misc. 313, 314 [1921].)
“ The divorced parent may upon the hearing of such application acquaint the Surrogate with such information the parent may have as will aid the Surrogate in determining whether the moral and temporal interests of the foster child will be promoted by the adoption.” (Matter of Greenfield, 281 App. Div. 887 [1953].) That the father objects to the adoption indicates he has within him some sense of paternal duty that is inconsistent with abandonment. In addition to the compulsory payments for support, he came to see the children at occasional and irregular intervals until his wife remarried, and sent them gifts. However, the petition is not based on abandonment since, “Under the facts of this case, whether or not the divorced parent abandoned the child is of no consequence.” (Matter of Greenfield, supra, p. 887.)
The father has been heard and the court has not been informed of any facts detrimental to the character and reputation of Francis William Boney or which would indicate the moral and temporal interests of the children would not be promoted. However, he objects to the adoption on account of change of name and also question of custody in event of death of the mother, as shown by his testimony: “ A. Because they are under my name and I would like to. have them under my name, they are of my *1082 blood. Q. Do you realize Mr. Widrick that if the adoption goes through and your former wife should die that you wotdd be in a different position than if the adoption went through? A. Bight. Q. Is that one of the reasons why you object. A. That is right.”
The father’s objection appears based on Matter of Thorne (240 N. Y. 444, 448 [1925]), where the court held: “ The decree of divorce merely disposed of the question of the custody of the child as between husband and wife * * *. As between them the court held that she was not fit, competent or a proper person to have custody of the infant child. She ceased to be a married woman and joint guardian of her child but she still remained his mother. Her rights of joint guardianship with her husband (Dom. Rel. Law, § 81) were taken from her but when he died the domicile of the child was not left in doubt. She became entitled as a parent to apply in the county of her domicile for letters of guardianship as against the world ” and “ If she is not to be ignored, if the child is still her child, her rights must be regarded. Her right as a parent, not as a married woman, to the care and custody of the child becomes superior to that of all others, unless it should be shown anew by child’s relatives or custodians that she is an unfit person to exercise such guardianship.” (Matter of Thorne, supra, pp. 449-450.)
This court cannot interfere with a judgment of the Supreme Court. Therefore, this proposed adoption, if granted, can in no way affect the right of visitation provided the father, Saranas Widrick, who may continue to exercise same as heretofore. (Matter of Geiger, supra, p. 411.) No application has been made by the father under section 1170 of the Civil Practice Act, to annul, vary, or modify the direction in the divorce decree as to custody.
The promotion of the interests of the children is essential to approval of an adoption. “ The rights of a foster child to inheritance and succession from his natural parents remain unaffected by adoption.” (Domestic Relations Law, § 115.) ‘1 The foster * * * parent and the foster child shall sustain toward each other the legal relation of parent and child and shall have all the rights and be subject to all the duties of that relation including the rights of inheritance from each other ”. (Domestic Belations Law, § 115.)
Saranas Widrick, father, is not an unoffending parent. The decree of divorce disposed of the question of the custody of the children between him and his wife, as between them the court held he was not fit, competent or a proper person to have custody of these children. He ceased to be a married man and *1083 joint guardian of the children with his wife. He had a second chance to have custody and guardianship restored to him when his wife returned to him with the children from Thanksgiving, 1956 until Easter, 1957. He did not remarry her. His former wife is happily remarried. The youngest child is 11. Should the mother of the children die before all or any of them become 21 years of age, one of the father’s objections to the adoption is concerned with his natural and legal right at that time as father. This objection is contingent on the death of the mother within such time, the survival of Saranas Widrick, and in such event whether he petitions for general guardianship. The mother and the children now have the right to live their own lives independent of him and this objection presents a conflict of present rights against contingent rights and can be of no consequence on this application.
The petitioner believes, in adopting these children, he will be better able to promote their moral and temporal interests. His petition indicates an unselfish attempt to benefit them notwithstanding the father’s right of visitation and the contingency of a future guardianship proceeding*. From the facts presented the court is assured that the children are in good surroundings and receive excellent care from their mother and petitioner who has assumed the role of father. His relations with them have always been harmonious. The petition of Francis William Boney to adopt Cynthia Carol Widrick, Saranas Clayton Widrick and Sue Ellen Widrick is hereby granted on the ground the court is satisfied that the moral and temporal interests of the foster children will be promoted thereby as required by section 114 of the Domestic Relations Law.
The question of the father’s objection to any change in the children’s names must now be determined. By reason of his misconduct he has lost their society and companionship. It is now proposed to take from him without his consent the right to have his own flesh and blood bear only his name during childhood.
“ While the legal name of a person now consists of a given name, or one given by his parents, and a surname, or one descending from them, history shows that this was not always the case. In the early life of all races surnames were unknown, while given names have been used from the most distant times to identify and distinguish a particular individual from his fellows. In England surnames were unknown until about the tenth century and they did not come into general use or become hereditary until many years later * * * the gradual development through circumstances and the necessity of identification *1084 as population increased.” (Smith v. United States Cas. Co., 197 N. Y. 420, 423 [1910].)
In an adoption proceeding, if the court is satisfied, “ that there is no reasonable objection to the change of name proposed the order shall direct that the name of the foster child be changed to the name stated in the agreement of adoption ’ ’. (Domestic Relations Law, § 114.) Reasonable, “ In accordance with reason; of men acting, speaking or thinking under the guidance of reason; just, fair minded”. (Webster’s New International Dictionary [2d ed.].)
In a proceeding for change of name under article 6 of the Civil Rights Law, in addition to “no reasonable objection to change of name proposed ”, the court must be satisfied, “if the petition be to change the name of an infant, that the interests of the infant will be substantially promoted by the change ”. (Civil Rights Law, § 63.)
The change of name proposed in the agreement of adoption, is to add surname “ Boney ” to their present full names. Is the father’s objection reasonable under the facts of this case? This will not be depriving the children of their father’s surname. The genealogy of the children will always be ‘ ‘ Widrick-Tuttle ’ ’, as will their historical biological forces. They will always be his children; their descendants, his descendants. The answer to his objection lies with him. He did not bring to bear upon the problems of society reason and realism in his marriage. At that time his sense of responsibility and duty as father was not strong enough to keep his family united. He should demand of his children on behalf of society, only what he is prepared to give himself. I am satisfied that there is no reasonable objection to change of name proposed.