In the Matter of the Adoption of JESSIE A. EKSTROM et al., Infants. ANTHONY CERONE, Respondent; EUGENE W. EKSTROM, SR., Appellant.

Third Department, December 30, 1965.

*Ungerman & Harris* (*Benjamin Ungerman* of counsel), for appellant.

*Cooper, Erving & Savage* (*Prescott C. Sook* of counsel), for respondent.

GIBSON, P. J. The appeals before us are from orders of the Surrogate's Court of Albany County, allowing and approving the adoption by petitioner of the infant children of his wife's prior marriage, against the objection of her former husband, the children's natural father, who was divorced from her because of his adultery.

Under section 111 of the Domestic Relations Law, " consent [to adoption] shall not be required of a parent * * * who has been divorced because of his or her adultery * * * except that notice of the proposed adoption shall be given * * * to a parent who has been divorced because of his or her adultery ". Accordingly, a citation was issued and served upon the natural father, requiring him to show cause why the proposed adoption should not be allowed; and in response thereto the natural father appeared and served an answer to the petitions in which he alleged, among other things, that he " is unalterably opposed to these children being adopted by the Petitioner " and that he " has a great love and affection for his children and does not under any circumstances wish to have

their relationship with him abrogated"; the answer thereupon requesting that the orders of adoption prayed for be denied.

Upon the hearing, the petitioner put in no proof, contending that the burden of going forward was upon the objectant who, in turn, offered no evidence "in view of the fact that no proof was offered in support of the petition". The court ruled that "inasmuch as the divorced parent's consent is not required for the adoption, the purpose of the notice required by the statute to the divorced parent is to enable him to present to the Court such facts relating to his relationship with the children that would mitigate against the severance of the blood ties between himself and the children"; and in each case the order of adoption subsequently entered recited the objectant's failure "to offer proof in support of the allegations contained in said answer or in opposition to the allegations of the said petition".

Whether or not the quoted provision of section 111 which simply requires "notice of the proposed adoption" to the divorced parent be deemed to require formal joinder of issue by service of an answer is not particularly important. In this case the parties adopted that procedure; in all cases, procedural niceties and demands for tactical advantage of one kind or another must give way to the basic rights and interests of the persons concerned — parents, stepparent and children alike — and must yield to such procedures, including order of proof, as the trial court shall find appropriate to enforce them. Ordinarily, of course, the petitioner will introduce proof to support the controverted allegations of the petition and such other allegations as the court may desire to have substantiated by evidence. There is also imposed upon petitioner the heavy burden of satisfying the court "that the moral and temporal interests of the foster child would be promoted" by the adoption (Domestic Relations Law, § 114); and it would be appropriate for the trial court to require that petitioner adduce proof bearing upon that question and that objectant then proceed to controvert petitioner's evidence in that or in any other respect, should he be so advised, and then go forward with proof in support of the objections and of the parental rights asserted by his answer. It would be equally appropriate, and in some cases perhaps preferable, to adduce proof in respect of "the moral and temporal interests of the foster child" after disposition of the objections interposed by the nonconsenting spouse. In cases of this nature no rigid procedural rules should obtain. Here, the parties' dispute as to the order of proof resulted in the production of no evidence at all; an adoption should not rest

upon a default; and the case must be remanded for development of an adequate record.

It may be helpful to the conduct of the proceeding upon remittal, and to the guidance of the courts in the Third Department generally, to outline our view of the purpose and effect of the above-quoted provisions of section 111 dispensing with the consent of a parent who has been divorced because of adultery, but requiring notice of the proposed adoption to be given to such parent. The rather wide variances of opinion disclosed by the decisions in which interpretation has been attempted are not reconcilable. The contention that the mere interposition of objections by the parent served with notice in some way evokes a requirement of consent, and interdicts adoption without it, is without substance in the light of the clear language of the statutory dispensation. The argument that objection by the nonconsenting parent can be overruled only upon proof of abandonment by that parent (see Ann. 47 ALR 2d 824, 842) seems to us similarly insubstantial; although proof of abandonment will ordinarily weigh heavily indeed against a plea for the preservation of parental ties. Our negation of the conclusion that proof of abandonment is necessary, as a matter of law, to counter the divorced parent's opposition, and, on the obverse side, our view that such proof will not always suffice to deny adoption, have support in well-considered decisions. (See *Matter of Greenfield,* 281 App. Div. 887; *Matter of Metzger,* 114 Misc. 313, per Foley, S.) We are in accord with the holding that the purpose of notice to the divorced parent whose consent is not required is to enable the parent upon a hearing to acquaint the court "with such information * * * as will aid [the court] in determining whether the moral and temporal interests of the foster child will be promoted by the adoption" (*Matter of Greenfield, supra*; *Matter of Anonymous,* 13 A D 2d 885) but we would emphasize, more strongly than some of the authorities seem to do, the weighty and searching consideration to be given the parent's natural rights and the severance of parental ties. As applicable in adoption proceedings as in the custody case in which it was voiced is the principle that, except in the certain "special and weighty circumstances" suggested, "the primacy of parental rights may not be ignored. In no case may a contest between parent and nonparent resolve itself into 'a simple factual issue as to which [affords] the better surroundings, or as to which party is better equipped to raise the child.'" (*People ex rel. Kropp* v. *Shepsky,* 305 N. Y. 465, 469.)

Neither the ties of blood and parenthood nor the moral and temporal interests of the child are absolutes; and in the adjudicative process each must be evaluated and assigned its relative weight, and if and when the credible proof of factors denoting unfitness is such as to satisfy the court that the parental ties have thereby become attenuated or significantly insecure, consideration shall then turn to the moral and temporal interests of the child. In establishing principles for the evaluation of such intangibles as human relationships and human behavior, specificity is not possible. Each case must proceed to decision upon sound and careful consideration of its particular facts, with full recognition of the primacy of parental rights unless and until there shall be submitted convincing proof that they have been substantially eroded by abuse, by misconduct or by circumstances.

The order should be reversed, on the law and the facts and in the interests of justice, and the proceeding remitted to the Surrogate's Court for further hearing, without costs.

HERLIHY, REYNOLDS, AULISI and HAMM, JJ., concur.

Order reversed, on the law and the facts and in the interests of justice, and proceeding remitted to the Surrogate's Court for further hearing, without costs.