John D. Bennett, J.
The parents of the two children in this adoption proceeding were divorced on November 4, JL971. The mother was awarded custody of the children and married the petitioner herein on August 30, 1972. The children reside with their natural mother and stepfather, the petitioner, who seeks to adopt them.'
Prior to this proceeding the children’s natural father, respondent herein, was convicted of second degree manslaughter and sentenced to an indeterminate term. He is presently incarcerated in a State correctional institution and has been cited there to show cause why his consent to the proposed adoption should not be dispensed with on the grounds of his abandonment of the infant children and loss of civil rights (Domestic Relations Law, § 111).
Section 111 of the Domestic Relations Law provides in part that ‘ ‘ the consent shall not be required of a parent who has abandoned the child or * * * who has been deprived of civil rights ”. (Emphasis supplied.)
Subdivision 1 of section 79 of the Civil Rights Law suspends all the civil rights of a person sentenced to imprisonment in a State correctional institution for an indeterminate term, having a minimum of one day and a maximum of natural life, during the term of the sentence. The only exception to the total suspension of civil rights is the right to commence an action or proceeding which was granted by a 1973 amendment (L. 1973, ch. 687). Prior to the 1973 amendment the right to commence an action or proceeding was limited to a convicted person whose sentence remained suspended or one who was on parole.
Respondent contends that in view of the 1973 amendment to section 79 of the Civil Rights Law, the language of section 111 of the Domestic Relations Law, referring to the deprivation of his civil rights is void for vagueness because it does not specify which civil rights an imprisoned parent must be deprived of in order to fall within the operation of section 111 of the Domestic Relations Law which dispenses with the necessity of his consent to an adoption. In addition he contends that the statutory restoration of the civil right to commence and prosecute an action or *282 proceeding impliedly codifies his right to defend himself in such action or proceeding. However, a convict’s right to defend himself in a civil action while incarcerated is not expressly affected in any way by subdivision 2 of section 79 of the Civil Eights Law. The disabilities flowing from the loss of civil rights have a wide scope but a prisoner’s right to defend an action brought against him has not been seriously questioned in the last 100 years (Bowles v. Habermann, 95 N. Y. 246, 250; Avery v. Everett, 110 N. Y. 317, 333; Garner v. Garner, 59 Misc 2d 29; Matter of Anonymous, 67 Misc 2d 366).
Subdivision 1 of section 79 of the Civil Eights Law clearly suspends all the civil rights of the respondent during the term of his sentence and section 111 of the Domestic Eelations Law dispenses with the requirement of the consent of a natural parent who has been deprived of his civil rights. Both statutes refer to the whole bundle of civil rights possessed by each citizen or lawful resident of this Nation and State.
The historical statement appearing in the Consolidators’ Note on the Civil Eights Law (McKinney’s Cons. Laws of N. Y., Book 8, Civil Eights Law, pp. 1-10) describes the development of our Bill of Eights and the fundamental principles incorporated in our revised statutes from the Magna Charta in 1215 through our present State Constitution. Enumerable personal and property rights are collected in the term “ civil rights ”. Subdivision 1 of section 79 of the Civil Eights Law imposes the disability upon a prisoner of losing “ all the civil rights ”. Subdivision 2 of section 79 of the Civil Eights Law merely restores one of those rights, the right to commence an action which in no way affects respondent’s pre-existing right to present his defense.
The fact that subdivision 2 of section 79 of the Civil Eights Law restores one of respondent’s civil rights does not remove him from the operation of section 111 of the Domestic Eelations Law and restore the requirement of obtaining his consent to an adoption of his children as though he were a free person capable of• fulfilling his parental obligations and enjoying his parental rights. The constitutionality of section 510 of the former Penal Law, the predecessor of section 79 of the Civil Eights Law, has been upheld (Harrell v. State of New York, 17 Misc 2d 950; Johnson v. Rockefeller, 58 F. R. D. 42, 47). Similar statutes suspending or depriving prisoners of civil rights have been upheld as constitutional (Tabor v. Hardwick, 224 F. 2d 526, 529; Chinn v. State of Oregon (6 Ore. App. 350). The court has not found any definitive treatment of the constitutionality of section *283 111 of the Domestic Relations Law as applied to imprisonment of natural parents. From its review of the law, the court finds that section 111 of the Domestic Relations Law is not void for vagueness and not in conflict with section 79 of the Civil Rights Láw and the historical development of the Civil Rights Law. If the result is harsh, respondent’s remedy lies with the Legislature.
Respondent further contends that section 111 of the Domestic Relations Law is unconstitutional if its operation denies him the opportunity to defend against the charge of abandonment and thereby violates his rights to due process and equal protection under the Fourteenth Amendment. In Matter of Anonymous (67 Misc 2d 366), the natural father had been deprived of his civil rights by reason of a felony conviction and incarcerated in a State correctional institution. The court ruled that respondent must receive notice of the adoption proceedings and have an opportunity to be heard, but it did not nullify the statute by suggesting his consent was a prerequisite to the adoption.
The more important question is what issues the hearing should concern itself with. Section 111 of the Domestic Relations Law previously dispensed with the necessity of a consent to an adoption of a parent divorced for his or her adultery, but expressly provided for notice to such parent of the application to adopt. Those provisions of section 111 have been eliminated (L. 1974, chs. 842, 843), but a number of cases have concerned themselves with the nature of the issues in such a contested adoption and their rationale by way of analogy is clearly relevant here.
In Matter of Ekstrom (24 A D 2d 276) the right of the non-consenting natural father, who had been divorced for his adultery, to receive notice of the proposed adoption, to appear and to present his defense in opposition to the adoption was acknowledged. The court held, however, that (p. 279) “ the purpose of notice to the divorced parent whose consent is not required is to enable the parent upon a hearing to acquaint the court ‘ with such information * * * as will aid [the court] in determining whether the moral and temporal interests of the foster child will be promoted by the adoption ’ ”. (Emphasis supplied.)
In Matter of Blachinsky (127 N. Y. S. 2d 553) respondent natural father failed to provide sufficient evidence that it was in the best interests of the child to continue his parental ties. In Matter of Anonymous (13 A D 2d 885) the consenting adulterous mother sustained her status as a natural parent, having satisfied the court’s requirement for proof (see, also, Matter of *284 Widrick, 25 Misc 2d 1078; Ann. 47 ALR 2d 824, 842). The common thread among these cases is that, despite the disability imposed upon the natural parents falling within the scope of consent-dispensing provisions of section 111 of the Domestic Relations Law, their rights to defend their parental status are preserved. However, “ the contention that the mere interposition of objections by the parent served with notice in some way evokes a requirement of consent, and interdicts adoption without it, is without substance in the light of the clear language of the statutory dispensation. The argument that objection by the nonconsenting parent can be overruled only upon proof of abandonment by that parent * * * seems to us similarly insubstantial ”. (Matter of Ekstrom, supra, p. 279.)
Respondent further complains in his argument that .section 111 of the Domestic Relations Law is unconstitutional in that its application to him in depriving him of his natural right as a father is arbitrary and capricious and constitutes cruel and unusual punishment for a conviction of a crime unrelated to his fatherhood,'-which conviction he is appealing. This claim forces a choice between the conflicting interests of the State and the natural parent. In People ex rel. Nabstedt v. Barger. (3 Ill. 2d 511) the court considered the constitutionality of . a statute similar to section 111 of the Domestic Relations Law which dispensed with consent because of mental illness. A guardian ad litem was appointed to protect the interests of the natural mother who had been institutionalized and expert testimony showed no likelihood of her recovery. The court approved the adoption. She subsequently recovered and brought an action to vacate the adoption. In upholding the constitutionality of the statute audits application as to her, the court stated (p. 516): ‘ ‘ Conflicting interests beyond the power of legislature or court to eliminate are inevitably involved in the human relationships with which the statute deals. One interest is that of the parent in the custody of his child in the event of recovery. The other is that of the State in the welfare of the child. Choice cannot be avoided. Indeed, legislative inaction is itself a choice. The constitution does not forbid selection of the alternative which favors the welfare of the public. Miller v. Schoene, 276 U. S. 272.”
Whereas the rights of the natural parent should be carefully guarded they are subject to regulation by the State and do not constitute absolute, inviolable and vested rights in their children. Where the best interests of the child and/or the welfare of the public conflict with the conduct of the parents’ relation *285 ship with their children, the State has the power to separate parents from children without parental consent. The plight of the mentally ill mother in the Nabstedt case is not unlike that of the respondent herein. The status of both create an indefinite separation of parent from child and an indefinite disruption of any feasible relationship. Both parents suffered the loss of their civil rights and became subject to statutory disabilities qualifying or eliminating the requirement of their consent to the adoption of their children by persons hoping to prove to the court that adoption was in the best interests of the children. The court must weigh and choose between the conflicting interests of the State and the natural parent, a choice which cannot be avoided.
The court finds that the application of section 111 of the Domestic Relations Law does not in any way-contravene respondent’s constitutional rights of due process under the law and equal protection under the Fourteenth Amendment. This matter will accordingly appear on the calendar for a hearing on October 17,1974 at 10:00 a.m. on the issue of whether the proposed adoption is in the best moral and temporal interests of the children.
Proceed accordingly.