OPINION OF THE COURT
Evans V. Brewster, S.
This is an application by the maternal aunt and uncle for the adoption of a male child allegedly born out of wedlock on October 1, 1971. Following the child’s birth, respondent, the natural father, moved to California with the natural mother and the child where they resided together until October 1, 1974. On that date, by order of the Superior Court of California, the respondent vacated the family residence and subsequently returned to New York. The child remained with his mother until she died in California on August 27, 1978. The child has been released by the California Department of Social Services to petitioners who are residents of Westchester County. The respondent natural father’s name appears on the adoptive child’s birth certificate.
Prior to this proceeding, the respondent was convicted of rape in the first degree and sentenced to an indeterminate term of 4 to 12 years. He is presently incarcerated in a State correctional facility where he was cited to show cause why an order approving the adoption should not be granted.
Respondent has moved pursuant to CPLR 3211 (subd [a], par 7) for an order dismissing the petition for adoption for failure to state a cause of action on the grounds that the respondent *988 does not consent to the adoption and upon the further ground that the statutes obviating the requirement of his consent are unconstitutional. It is the respondent’s contention that subdivision 1 of section 79 of the Civil Rights Law and section 111 (subd 2, par [d]) of the Domestic Relations Law are violative of his rights under the Eighth and Fourteenth Amendments to the United States Constitution and sections 5, 6, and 11 of article I of the New York Constitution.
It should be noted at the outset that the United States Supreme Court has struck down section 111 of the Domestic Relations Law as being constitutionally infirm to the extent that it establishes an "overbroad gender-based classification” which discriminates against unwed fathers by requiring only the natural mother’s consent to the adoption of an illegitimate child (Domestic Relations Law, § 111, subds 1, 2) even where the natural father has acknowledged paternity or otherwise established a "substantial relationship” with the child. (Caban v Mohammed, 441 US 380.) "[TJhis undifferentiated distinction between unwed mothers and unwed fathers, applicable in all circumstances where adoption of a child of theirs is at issue, does not bear a substantial relationship to the State’s asserted interests” (Caban v Mohammed, supra, p 394) in promoting the adoption of illegitimate children.
This is not to say that section 111 of the Domestic Relations Law is unconstitutional in all respects. Indeed, the court acknowledged with approval New York’s right to provide, as it does in section 111 (subd 2, par [a]) of the Domestic Relations Law that fathers who have abandoned their children have no absolute right to block adoption of those children (Caban v Mohammed, supra, pp 392-393, n 13). The adoption of legislation making parental consent unnecessary in certain instances (e.g., abandonment), is constitutionally permissible to allow the adoption of illegitimate children when their natural parents are unavailable or otherwise unable to provide stable homes for their children. Dispensing with parental consent in cases of abandonment is but one example of the alternatives embodied in subdivision 2 of section 111 of the Domestic Relations Law to the gender-based distinction of subdivision 1 of section 111 which are "more closely attuned” to the State interest of providing for the welfare of its children, asserted in support of the statutory classification sought to be protected. Clearly, the necessity of a natural father’s consent to the adoption of a child born out of wedlock is not constitutionally *989 required in all circumstances. Only that portion of section 111 of the Domestic Relations Law which accords unwed mothers different rights from those of unwed fathers is constitutionally infirm and the court must therefore apply the statute as it stands save for that portion which has been found to be constitutionally offensive (Matter of Anthony P., 101 Misc 2d 918).
Respondent contends that section 111 (subd 2, par [d]) of the Domestic Relations Law when read in conjunction with subdivision 1 of section 79 of the Civil Rights Law results in the possibility that his child may be adopted without his consent and without the necessity of a hearing for the purpose of showing him to be an unfit parent, thus resulting in an unconstitutional deprivation of procedural and substantive due process and equal protection.
Section 111 (subd 2, par [d]) of the Domestic Relations Law dispenses with the necessity of the consent of any "parent or of any other person having custody of the child * * * who has been deprived of civil rights pursuant to the civil rights law and whose civil rights have not been restored” (emphasis supplied). Subdivision 1 of section 79 of the Civil Rights Law suspends all the civil rights of a person sentenced to "a sentence of imprisonment in a state correctional institution for * * * an indeterminate term, having a minimum of one day and a maximum of natural life”. The sole exception of the total suspension of civil rights is the right to commence an action or proceeding (Civil Rights Law, § 79, subd 2).
Respondent’s argument that his right of procedural due process has been violated is without merit. Subdivision 3 of section 111 of the Domestic Relations Law provides in pertinent part that, "Notice of the proposed adoption shall be given in such manner as the judge or surrogate may direct and an opportunity to be heard thereon may be afforded to a parent who has been deprived of civil rights and to any other parent whose consent to adoption may not be required * * * if the judge or surrogate so orders.” (Emphasis supplied.) By its express terms, the statute requires that parents whose consent is not required, for whatever reason, be given notice of the proposed adoption. Although the statute makes the necessity of a hearing discretionary with the court, the decisional law of this State has consistently recognized such parent’s right to a hearing on the merits of the adoption (Matter of Anonymous, 79 Misc 2d 280; Matter of Anonymous, 67 Misc 2d 366; see, *990 also, Matter of Malpica-Orsini, 36 NY2d 568; Matter of Kenneth M., 87 Misc 2d 295; Matter of Ekstrom, 24 AD2d 276; Matter of Anonymous, 13 AD2d 885). While the purpose of such hearing is not to determine "unfitness”, but rather whether the proposed adoption will be in the best interests of the child, the parent whose consent is not required may there present " 'such information * * * as will aid [the court] in determining whether the moral and temporal interests of the * * * child will be promoted by the adoption’ ” (Matter of Ekstrom, supra, p 279). Furthermore, evidence regarding respondent’s relationship with the child and the closeness of that relationship is pertinent in establishing whether or not the proposed adoption furthers the child’s interests. The fact that a "best interests” hearing has not been held at this juncture is due to the staying effect of respondent’s motion. Accordingly, his right to procedural due process has been preserved.
Respondent’s contention that section 111 (subd 2, par [d]) of the Domestic Relations Law and subdivision 1 of section 79 of the Civil Rights Law deny him substantive due process in that they deprive him, a convicted felon, of substantive rights (i.e., an "unfitness” hearing) accorded all other classes of parents before the abrogation of parental rights is somewhat more troublesome. Although a similar claim of substantive due process was raised in Caban v Mohammed (441 US 380, supra), the Supreme Court refused to deal with that issue, choosing instead to decide the case on equal protection grounds.
In his argument that all parents are constitutionally entitled to a hearing as to their parental fitness before the abrogation of parental rights, the respondent relies on Stanley v Illinois (405 US 645). There, the State of Illinois by way of dependency proceedings, removed Stanley’s out-of-wedlock children from his custody without an "unfitness” hearing otherwise accorded married parents under Illinois law. The termination of Stanley’s parental right was automatic under the terms of the relevant statute without the requirement of any hearing or a finding that the children’s interests would be served thereby. In sharp contrast, the respondent is a convicted felon, a parent who by his own actions and conduct, has created a presumption of his unfitness.
In adopting the provisions dispensing with consent in subdivision 2 of section 111 of the Domestic Relations Law the *991 State has carefully sought to balance on the one hand the rights of a parent with those of the State in promoting the welfare of its children on the other. "Neither the ties of blood and parenthood nor the moral and temporal interests of the child are absolute * * * Each case must proceed to decision upon sound and careful consideration of its particular facts, with full recognition of the primacy of parental rights unless and until there shall be submitted convincing proof that they have been substantially eroded by abuse, by misconduct or by circumstances. ” (Matter of Ekstrom, 24 AD2d 276, 280, supra; emphasis added.)
In enacting section 111 (subd 2, par [d]) of the Domestic Relations Law the Legislature of this State has concluded that a person falling within the provisions of section 79 of the Civil Rights Law, by his own actions has sufficiently demonstrated the erosion of his parental rights to permit the State to act without his consent in the child’s best interest.
In Matter of Ginnan (101 Misc 2d 853, 859) a case which but for the crime committed by the nonconsenting parent, is virtually identical in its facts to those here presented, it was stated that "[i]t is a prerogative of the State to pass laws when an individual acts contrary to the laws and mores of the State and, in doing so, to deprive that individual of certain rights to protect and preserve the rights of other innocent citizens. It is in the best interests of the people of the State, as a whole, that the criminal laws be preventive and protective in nature and effect.”
The Constitution does not require that an imprisoned parent’s substantive rights always be coextensive with those afforded other parents. In this context, the loss of civil rights provides a constitutionally valid ground for distinction. The legislative decision to withhold from the imprisoned parent the right to veto an adoption by suitable parties reflects the judgment that imprisoned parents should not arbitrarily withhold from their children the benefit of a stable family environment.
The legitimacy of the State of New York’s interest in providing for the well-being of illegitimate children has been recognized by the courts (Caban v Mohammed, 441 US 380, 389-391, supra; Matter of Malpica-Orsini, 36 NY2d 568, supra, opp dsmd 423 US 1042). That the well-being of such children often requires their adoption into new and stable families is equally uncontroverted. Whereas, the conceded effect of the *992 statute here under attack is to permit the termination of a fundamental right of a specific class of persons, such a result is constitutionally permissible if the statutory classification is reasonable, not arbitrary and bears a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced are treated alike (Royster Guano Co. v Virginia, 253 US 412). The generalization reflected by the claimed classification must be true of the majority of the members of the class and is not constitutionally infirm "because the classifications made * * * are imperfect” (Dandridge v Williams, 397 US 471, 485).
"A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.” (McGowan v Maryland, 366 US 420, 426.) Where a parent’s own conduct has created a situation wherein he is unable to provide a stable home for his child for the foreseeable future, the State may, when balancing his refusal to consent against the interest of his child, reasonably choose to accord it different weight than the refusal of parents not suffering the same disability (Matter of D., 24 Ore App 601). He alone must bear the full responsibility of his criminal conduct.
Respondent further complains that the application of section 111 (subd 2, par [d]) of the Domestic Relations Law and subdivision 1 of section 79 of the Civil Rights Law constitutes cruel and unusual punishment. The resolution of this argument necessitates choosing between the conflicting interests of the State in promoting the public welfare and that of the natural parent in retaining custody of his child (Matter of Anonymous, 79 Misc 2d 280, 284). Choice cannot be avoided. Indeed legislative inaction is itself a choice. The Constitution does not forbid resolution of this conflict in favor of the public welfare (Miller v Schoene, 276 US 272). Under the present circumstances, the father, as a result of his own conduct, is precluded from having physical custody of his child. Realistically, he could not have such custody until his release from prison which may not occur for many years. His imprisonment has rendered him incapable of providing his child with a stable home. While rights of the parent should be carefully guarded, they are nevertheless, subject to State regulation and will yield without parental consent where the best interests of the child and consequently the public welfare so require Matter of Anonymous, 79 Misc 2d 280, 284-285, supra).
*993 "There is no doubt that the State has the power to deny constitutional rights, even the most basic and fundamental of these rights, in order to preserve the constitutional protection and public welfare of the State as a whole. The rights of individuals are of equal magnitude until they impinge on the rights of another. It is the prerogative of the State to pass laws to deprive an individual of certain rights when an individual acts contrary to the laws and mores or to the accepted principles of conduct within a State.” (Matter of Ginnan, 101 Misc 2d 853, 861, supra.)
The child also has fundamental and constitutional rights. In balancing these conflicting interests within the parameters of these opposing constitutional guarantees this court finds that the best interests of the child are served by the statutory sanctions which deny respondent any substantive rights in this proceeding. (Matter of Ginnan, supra.)
In passing upon the constitutionality of any statute, the first rule to be considered by the court is the strong presumption of constitutionality applicable to any enactment of the Legislature. While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt and only as a last resort may legislation be struck down as unconstitutional. The Legislature is presumed to have investigated the necessity for such legislation, and if any state of facts justifies its enactment, it must be upheld (Lighthouse Shores v Town of Islip, 41 NY2d 7; Montgomery v Daniels, 38 NY2d 41, 54; People v Pagnotta, 25 NY2d 333; Matter of Van Berkel v Power, 16 NY2d 37; I. L. F. Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263; Defiance Milk Prods. Co. v Du Mond, 309 NY 537). The burden of proving the unconstitutionality of the statutes here under attack rests squarely on the respondent natural father (Lindsley v Natural Carbonic Gas Co., 220 US 61; Matter of Fay, 291 NY 198). The respondent has not demonstrated the unreasonableness of the legislative enactments. Thus, he has not discharged his burden.
Accordingly, respondent’s motion to dismiss the petition is denied in all respects. A hearing on the issue of whether the proposed adoption is in the best moral and temporal interests of the child will be held at 10:00 a.m. following the call of the calendar in the Surrogate’s courtroom on July 8, 1980.