OPINION OF THE COURT
Kevin C. Fogarty, J.
Spence-Chapin Services to Families and Children (the Agency) instituted a proceeding pursuant to section 384-b of the Social Services Law to terminate the rights of the respondent father on the ground of abandonment. The respondent was served by publication, a default inquest was held, and an order of termination was entered on December 7, 1979.
On June 3, 1980, by order to show cause, the respondent sought to set aside the order of December 7, 1979 and have the matter set down for an all-purpose hearing on the ground that he had received no notice of the proceeding prior to entry of judgment against him. The respondent alleges that at the time the petitioner Agency brought this proceeding, he was in a State correctional institution and no research or diligent effort was made to contact him there to give him *43 notice of the proceeding before jurisdiction was obtained by an order of publication. Therefore, he asks that his default be vacated and a hearing granted to him since he is now on parole and has, for the first time, learned of the proceedings.
The petitioner argues that the court should not reopen the hearing since the reason given by the respondent for his failure to attend the hearing, namely his confinement at a State correctional facility under a felony conviction means that his consent to an adoption is no longer required pursuant to section 111 (subd 2, par [d]) of the Domestic Relations Law which provides:
“2. The consent shall not be required of a parent or of any other person having custody of the child * * *
“(d) who has been deprived of civil rights pursuant to the civil rights law and whose civil rights have not been restored”.
Subdivision 1 of section 79 of the Civil Rights Law provides : “a sentence of imprisonment in a state correctional institution for any term less than for life or a sentence of imprisonment in a state correctional institution for an indeterminate term, having a minimum of one day and a maximum of natural life, forfeits all the public offices, and suspends, during the term of the sentence, all the civil rights, and all private trusts, authority, or powers of, or held by, the person sentenced.”
The deprivation of civil rights extends to persons who have been paroled from prison. (Matter of Ginnan, 101 Misc 2d 853; Matter of O’Daniel, 128 NYS2d 351; Lehrman v State of New York, 176 Misc 1022.)
It is conceded that the respondent was arrested in June, 1976, convicted and sentenced to a term of 3-6 years in a State correctional facility, paroled on March 12, 1980, and will remain on parole until June, 1982.
It is also conceded that on the application for an order of publication, a search was made of records of the New York City Department of Correction, and the New York State Division of Parole. Had inquiry been made to the New York State Department of Correctional Services, *44 the respondent’s place of incarceration would have been located since he was at that time under its jurisdiction and control.
In the interests of justice, therefore, the default of the respondent must be set aside.
In answer to the petitioner’s invocation of section 111 (subd 2, par [d]) of the Domestic Relations Law, the respondent father contends that the section is not at issue in this proceeding, which is a termination of parental rights proceeding, and is only applicable in an adoption proceeding.
In the alternative, the respondent argues that section 111 (subd 2, par [d]) of the Domestic Relations Law is unconstitutional in that this provision is impermissibly broad depriving the respondent father of his rights protected by the due process clauses of the New York State and United States Constitutions. The respondent argues that New York has created a presumption that a felon is unfit to raise his children by reason of his status as a felon and that it was this procedure, by presumption, which the United States Supreme Court in Stanley v Illinois (405 US 645), struck down as unconstitutional.
The respondent father, therefore, requests that this matter be set down for a hearing on the merits of the abandonment petition.
The Law Guardian for the infant requests that the court vacate its order of December 7, 1979 with regard to the respondent father’s rights and dismiss the petitioner Agency’s petition without dealing with the applicability of section 111 (subd 2, par [d]) of the Domestic Relations Law. It is the Law Guardian’s position that the “issue is not properly before the Court at this time, and to decide it would be to issue an advisory opinion” and that neither the petitioner Agency nor the respondent father can be prejudiced by the dismissal of the petition.
The position taken by the Law Guardian is troublesome for a number of substantive reasons. How may the court dismiss the petitioner Agency’s petition without implicitly, at least, holding that section 111 (subd 2, par [d]) *45 of the Domestic Relations Law is valid and, therefore, acts as a bar to a further proceeding? Both petitioner and respondent have asked that if the default be vacated, a hearing be scheduled.
Furthermore, while there may be no prejudices to the petitioner Agency or the respondent father, what of the child? She is four years of age, has never seen her parents, and has not yet been placed in an adoptive home by the Agency. Shall she remain in limbo while a new proceeding is begun which will involve the same parties and issues raised in this proceeding and will be appealed by one or the other side no matter what decision the court reaches? Does this not constitute a prejudice to the child who is entitled to a stable and loving home?
Although the proceeding before the court deals with permanent termination of parental rights, this court feels compelled to address the issue of the validity of section 111 (subd 2, par [d]) of the Domestic Relations Law in a limited manner because of the Catch-22 situation involved herein. The Law Guardian’s contention that a decision on the question of section 111 of the Domestic Relations Law would be advisory and inappropriate must be rejected. The decision of my distinguished colleague, Judge Turret, dealt with a respondent presently incarcerated and who could not be released for at least four years. (Matter of Barber, Family Ct, New York County, Sept. 14, 1979, Turret, J.) If the petitioner Agency had been successful in its efforts to locate the respondent father, a finding of abandonment would not have been permissible and pursuant to section 111 (subd 2, par [d]) of the Domestic Relations Law, his consent to an adoption could have been dispensed with. However, with the default being set aside, if abandonment is still found, the respondent’s consent might again not be needed because a sentence of imprisonment encompasses time spent on parole. On the other hand, if the petition is dismissed, the court will implicitly be upholding the statute thereby barring a further proceeding, as noted (supra).
Therefore, it is the duty of this court to squarely face the question of the validity of section 111 (subd 2, par [d]) of the Domestic Relations Law. Yet, it is possible to do so *46 on the narrow issues before the court without invalidating the entire statute as it now stands, i.e., this court holds that section 111 (subd 2, par [d]) of the Domestic Relations Law as applied to parolees is unconstitutional. In so holding, this court is expressly reserving the question of whether the statute could withstand a constitutional challenge as to respondents still imprisoned for facts more appropriate to that question.
This court finds that the lack of distinction drawn between respondents who are on parole and respondents who are incarcerated makes no rational sense. While the latter group is being punished for the crimes which they had previously committed, the former group is beyond the punishment phase of their criminal convictions. Rather, society has deemed that those on parole are candidates for rehabilitation and a release from prison is the first step of the process. By retaining a punishment aspect, e.g., dispensement with consent to adoption, successful rehabilitation is made that much more difficult due to how the parolee views society as viewing him, i.e., as someone not deserving of the legal rights of a father.
Where fundamental rights are involved, the United States Supreme Court has held that the statute be subjected to the strict scrutiny test in order to determine whether it is in conflict with the equal protection clause. This strict scrutiny test requires the court to find a compelling State interest for upholding the statute. (San Antonio Ind. School Dist. v Rodriguez, 411 US 1, 16.) The right of a parent to rear his or her child has been held to be such a fundamental right requiring the application of the strict scrutiny test. (Pierce v Society of Sisters, 268 US 510, 535; Caban v Mohammed, 441 US 380.)
This court can find no compelling State interest for upholding section 111 (subd 2, par [d]) of the Domestic Relations Law when it is applied to parolees. All cases cited in the parties’ memoranda of law deal with respondents who are currently incarcerated and, therefore, unable to play any sort of role in the child’s upbringing. On the contrary, the respondent father in the instant case is on parole and may be beginning to rehabilitate himself outside the confining *47 walls of a prison. No longer incarcerated, he has the potential to start to play an active role as a father in the life of his child if, after a hearing no abandonment is found. This court fails to see how denying the respondent this right at the very time when he is attempting to begin life anew would serve the compelling State interest of providing children with stable and permanent homes since it is the hope of the State, in releasing the respondent from prison, that he would be making a stable and permanent home for himself and his loved ones.
Moreover, this court finds that section 111 (subd 2, par [d]) of the Domestic Relations Law, when applied to parolees, also violates the due process clause. As the United States Supreme Court noted in Stanley v Illinois (405 US 645, 656-658, supra): “Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand * * * The State’s interest in caring for Stanley’s children is de minimus if Stanley is shown to be a fit father. It insists on presuming rather than proving Stanley’s unfitness solely because it is more convenient to presume than to prove. Under the Due Process Clause that advantage is insufficient to justify refusing a father a hearing when the issue at stake is the dismemberment of his family.”
In Matter of Anonymous (104 Misc 2d 985, 991), Surrogate Brewster upheld the constitutionality of section 111 (subd 2, par [d]) of the Domestic Relations Law on substantive due process grounds pointing out that it is the father’s own act which serves to deprive him of any say in the adoption of his child.
“The Constitution does not require that an imprisoned parents’ substantive rights always be coextensive with those afforded other parents. In this context, the loss of civil rights provides a constitutionally valid ground for distinction. The legislative decision to withhold from the *48 imprisoned parent the right to veto an adoption by suitable parties reflects the judgment that imprisoned parents should not arbitrarily withhold from their children the benefit of a stable family environment.”
While the United States Supreme Court holding in Quilloin v Walcott (434 US 246) clearly justifies the right of a State to make distinctioñs between individuals within a class and therein gave a divorced father less veto authority than it provided to a married father, the distinctions must have a reasonable basis and be readily distinguishable. It should be pointed out that the successful real parties in interest in Quilloin, Stanley, Matter of Anonymous and Matter of Ginnan (101 Misc 2d 853, supra) were all custodial parents or adopting parents who had established ties with the children in question.
In the present case we are weighing the respective merits of a father and an as yet unknown possible adoptive parents.
To deny a hearing on fitness under these circumstances makes no sense. The legislative enactment must pass both strict scrutiny and valid State purpose tests. As to an imprisoned parent it may meet both tests but as to a parent on parole “the counterveiling intents” (Stanley v Illinois, 405 US 645, supra) cannot be weighed without a hearing. The Quilloin holding is that substantive rights under the due process clause were not violated by an application of a “best interest of the child” standard. New York has clearly held that “best interest” can only be the test when “extraordinary circumstances” are present. (Matter of Bennett v Jeffreys, 40 NY2d 543.) A hearing is required to ascertain whether or not they are present.
Matter of Ginnan (supra) is another recent case which has analyzed section 111 (subd 2, par [d]) of the Domestic Relations Law in light of Stanley v Illinois (405 US 645, supra) and found it to be constitutional. However, the facts in Matter of Ginnan (supra) are quite distinguishable from the facts presently confronting the court. In Matter of Ginnan (supra), the father of the child had been convicted and imprisoned for killing his wife, the child’s mother. In relying on those facts, the Family Court, Steuben County, upheld the statute while noting that “there may be a fact *49 pattern which could give rise to a contrary decision.” (Matter of Ginnan, 101 Misc 2d 853, 863, supra.)
In the present case, the crime which the respondent father was convicted of comitting is totally unrelated to his status and duties of a father, i.e., attempted robbery in the third degree. More importantly instead of facing incarceration, the respondent here is on parole. The court finds that the concerns of Stanley v Illinois (supra) are clearly applicable. Application of section 111 (subd 2, par [d]) of the Domestic Relations Law would mean that the respondent would be deprived of his status as a father simply because of his status as a felon parolee without reference to his fitness to act as a parent. Such classification is impermissible and violative of the due process clause.. Accordingly, a hearing on abandonment is mandated.
Since the court has set aside the default of the respondent and since the court has held section 111 (subd 2, par [d]) of the Domestic Relations Law, as applied to parolees, unconstitutional, the case remains on the calendar for August 25, 1980 in Part III for a hearing on abandonment. This court transfers the case back to New York County and directs the Clerk of the Court in New York County to calendar this case for August 25, 1980 in Part III.