In the Matter of the Adoption of JOSEPH LL., JR. DALE KK., Respondent; JOSEPH LL., SR., Appellant. (Proceeding No. 1.)

In the Matter of JOSEPH LL., SR., Appellant, v CYNTHIA KK., Respondent. (Proceeding No. 2.)

Third Department, December 8, 1983

APPEARANCES OF COUNSEL

*David Leven* (*Tom Terrizzi* of counsel), for appellant.

*Broome Legal Assistance Corp.* (*Thomas Christina* of counsel), for respondents.

*Robert Abrams, Attorney-General* (*Clifford A. Royael* of counsel), in his statutory capacity under section 71 of the Executive Law.

OPINION OF THE COURT

CASEY, J.

We find no constitutional infirmity in the provisions of section 111 (subd 2, par [d]) of the Domestic Relations Law and subdivision 1 of section 79 of the Civil Rights Law,* which combine to eliminate the need for the consent of a natural parent to the adoption of his or her child where the natural parent has received a sentence of imprisonment in a State correctional facility for any term less than for life.

Joseph LL., Sr., is the natural father of a child born in November, 1977, approximately one month after the natural parents were married. The natural parents separated in April, 1978 with the mother retaining custody of the child. The natural parents were divorced in October, 1978. In June, 1979, the natural father was arrested and charged with arson in the third degree. Upon his conviction of that crime in January, 1980, he was sentenced, as a second felony offender, to a term of imprisonment of 7½ to 15 years in a State correctional facility. The natural mother thereafter remarried and her husband petitioned to adopt the child. After receiving notice of the adoption proceeding, the natural father intervened and commenced a separate proceeding seeking visitation. Following a hearing, and after rejecting the natural father's constitutional arguments, Family Court approved the adoption and dismissed the natural father's petition for visitation. These appeals ensued.

The natural father contends that by creating a class of natural parents whose consent to the adoption of their children is not required despite the absence of a finding of unfitness, the statutory provisions violate the equal protection clause. To resolve this issue we must first determine the standard of review to be applied. The natural father claims that his parental rights involve a fundamental liberty interest and that, therefore, the strictest standard of review is applicable. We reject this claim. The strictest standard of review, requiring the State to show

---

* Section 111 (subd 2, par [d]) of the Domestic Relations Law has been repealed, effective January 1, 1984 (L 1983, ch 911). The act, however, specifically provides that it shall not affect, impair or restore any right or interests conferred or terminated prior to the effective date (L 1983, ch 911, § 6). Accordingly, the issues raised by this appeal are not rendered moot by the subsequent legislation.

that the classification is necessary to promote a compelling governmental interest, traditionally applies where the classification is deemed suspect, i.e., based on race, alienage or nationality (see *People v Whidden,* 51 NY2d 457, 460), and the natural father concedes that the classification here is not suspect. Moreover, in *Caban v Mohammed* (441 US 380, 388), the court, in reviewing a statutory gender-based classification affecting parental rights, employed a less exacting standard, requiring only that the classification bear a substantial relation to an important State objective. Indeed, there is support for the Attorney-General's contention that the rational basis test is appropriate where gender is not an issue (see *Lehr v Robertson,* 463 US __, n 27, 103 S Ct 2985, 2997, n 27; *People ex rel. Sibley v Sheppard,* 54 NY2d 320, 327), although some lower courts in this State, relying upon *Caban (supra),* have applied the more rigorous test in passing on equal protection challenges to the statutory provisions at issue herein (see *Matter of Jonathan E. G.,* 107 Misc 2d 900, 908-909; *Matter of Miller,* 105 Misc 2d 41, 46; but see *Matter of Anonymous,* 104 Misc 2d 985, 992; *Matter of Ginnan,* 101 Misc 2d 853, 862-863). Inasmuch as the classification passes constitutional muster under either of the latter standards, we need not decide the issue.

The State's concerns in facilitating the adoption of young children and having the adoption proceeding completed expeditiously have been recognized as legitimate State interests underlying the entire statutory scheme of section 111 of the Domestic Relations Law (see *Lehr v Robertson, supra,* p __, p 2995; see, also, *Caban v Mohammed, supra,* p 391). These cases considered the statutory provisions relating to natural fathers of illegitimate children and, therefore, also involved the State's interest in removing the stigma of illegitimacy. We find the State's interest no less important in this case, despite the absence of illegitimacy. The natural parent here, through his own willful and wanton conduct in violating the Penal Law, has effectively removed himself from any active role in the daily supervision, education, protection and care of his child for a substantial period of time during the child's formative years. Eliminating the need for the consent to adoption

under such circumstances serves the State's legitimate interest in providing the child with the stability of a normal two-parent home (cf. *Caban v Mohammed, supra,* p 391), particularly where, as here, the natural father has never established a substantial relationship with his child (see *Lehr v Robertson, supra,* pp __, __, pp 2995-2997). Accordingly, the statutory scheme at issue does not violate the equal protection clause (*Matter of Jonathan E. G., supra*).

The natural father's substantive due process argument is twofold. First, he contends that his parental rights are a fundamental liberty interest which cannot be taken away by the State without a finding of unfitness. Although substantially the same issue was raised in *Caban (supra),* it was not decided since the case was disposed of on equal protection grounds. In *Lehr (supra,* pp __, __, pp 2990-2994), however, the court dealt with the issue, concluding that under certain circumstances, the State could, consistent with due process, eliminate the need for the consent of a natural parent in the absence of a finding of unfitness (see, also, *Quilloin v Walcott,* 434 US 246, 255). Thus, while a natural parent's concern in the care and custody of his or her child has been described as a "fundamental liberty interest" (*Santosky v Kramer,* 455 US 745, 753), the mere existence of a biological link is not sufficient in and of itself to elevate a natural parent's interest to a fundamental one entitled to equivalent constitutional protection (*Lehr v Robertson, supra,* p __, p 2993). Rather, it is the existence of a parent-child relationship that cloaks a natural parent with the rights guaranteed by the Constitution (*supra,* p __, p 2993; compare *Caban v Mohammed, supra,* with *Quilloin v Walcott, supra*). As distinguished from *Lehr (supra),* the child herein was born in wedlock and, thus, was the legitimate child of the natural father (Domestic Relations Law, § 24, subd 1). Accordingly, there existed a family relationship, at least in theory (see *Caban v Mohammed, supra,* p 397). In practice, however, the relationship was fleeting at best. As found by Family Court, the natural father's contacts with his child, both during the brief marriage to the natural mother and thereafter, were minimal. Having violated the Penal Law, he has removed

himself from any active role as a parent for a substantial period of time. In these circumstances we find no substantive due process violation in the statutory scheme which eliminates the need for the natural father's consent to the adoption of his child (see *Lehr v Robertson, supra*).

In the second prong of his substantive due process argument, the natural father argues that the statutory scheme creates an irrebuttable presumption of unfitness. Relying upon *Stanley v Illinois* (405 US 645), which involved a statute that automatically made the children of an unwed father wards of the State upon the death of their mother, the natural father contends that such a presumption is unconstitutional. Once again, a significant factor distinguishing this case from that relied upon by the natural father is the absence of any real parent-child relationship. More importantly, however, the statutory scheme, as interpreted and applied by the courts of this State, including Family Court herein, merely gives the court the power to approve an adoption without the natural parent's consent. Whether the court will exercise this power depends upon the best interest of the child. In determining the child's best interest, the courts have included consideration of the natural parent's fitness (see, e.g., *Matter of Jonathan E. G.,* 107 Misc 2d 900, *supra; Matter of Ginnan,* 101 Misc 2d 853, *supra*). Accordingly, the statutory scheme at issue, as generally interpreted by the courts of this State and as applied herein, does not create an unconstitutional irrebuttable presumption (see *Quilloin v Walcott,* 434 US 246, *supra*).

We find no merit in the natural father's remaining constitutional arguments. He received timely notice of the adoption proceeding and actively participated, with the assistance of counsel, in the hearing. As noted above, the statutory scheme constitutes a valid exercise of the State's power to act in the child's best interest, thereby promoting the public welfare, and, thus, the statutory provisions are not penal (see *Matter of Anonymous,* 79 Misc 2d 280, *supra*). Finally, there is clear and convincing proof in the record to support Family Court's finding that the best interest of the child will be served by permitting adoption of the child by the natural mother's husband without the consent of the natural father.

The orders should be affirmed, without costs.

MAHONEY, P. J., SWEENEY, WEISS and LEVINE, JJ., concur.

Orders affirmed, without costs.