OPINION OF THE COURT
Chief Judge Wachtler.
 In this case, we consider whether the respondent, a Missouri corporation with no ties to New York, has a due process constitutional right to opt out of a New York class action in which the relief sought in the complaint was largely equitable in nature. We hold today that when a class action complaint demands predominantly equitable relief that will necessarily benefit the class as a whole if granted, the Trial Judge is not required to give class members the opportunity to opt out of the class. We also hold, however, that under that governing principle as applied to the facts of this case, the Trial Judge erred in approving a settlement agreement inso *188 far as it purported also to extinguish the respondent’s right to pursue a cause of action in damages.
This class action stems from a 1988 corporate merger involving appellant Colt Industries Inc (Colt), a Pennsylvania corporation with offices in New York City, and appellant Morgan Stanley Group Inc. (Morgan Stanley), a New York-based securities firm. Colt and its subsidiaries were in the business of manufacturing and selling firearms and machine and engine parts. At the time the merger was announced in March of 1988, Colt had 32 million shares of common stock outstanding and approximately 16,300 shareholders of record. Of those 32 million shares, 62,000 were owned by the respondent James S. Merritt Company (Merritt), a Missouri corporation with its principal place of business in Kansas City.
In 1986, two years before the merger, Colt underwent a major recapitalization. Each share of Colt common stock held by its public shareholders was exchanged for $85 in cash and one new share. More than 30 million shares were repurchased as a result and Colt incurred $1.5 billion in debt.
In January of 1988, Morgan Stanley advised Colt of its interest in acquiring the company. A special committee consisting of Colt’s outside directors, with the assistance of Colt’s financial advisor, the First Boston Corporation, engaged in negotiations with Morgan Stanley over the terms of a merger agreement. The agreement, which was reached in March of 1988, provided that Colt Holdings Inc., a Morgan Stanley affiliate that came into existence to effectuate the merger, would make a tender offer to purchase all outstanding shares of Colt common stock at $17 per share. This tender offer was to be followed by the merger, in which all remaining shareholders would be entitled to the same $17 consideration for their stock.
The proposed merger ignited 15 separate shareholder suits in State courts in New York and Pennsylvania. Counsel for these plaintiffs stipulated to an order that consolidated these suits in Supreme Court, New York County. Thereafter, class counsel filed a first amended consolidated class action complaint naming Colt and its officers and directors as defendants. In substance, they alleged that the defendants: (1) had breached their common-law fiduciary duties to the class by offering a price per share that was grossly inadequate; (2) had engaged in a course of conduct that lacked any valid business purpose and was designed solely to eliminate the class as Colt *189 shareholders; (3) were not exercising independent business judgment and were in fact engaging in self-dealing to the detriment of the class; and (4) had failed to solicit other, possibly more beneficial, bids from potential buyers.
In their prayer for relief, the plaintiffs demanded a declaration that the action was a class action, preliminary and permanent injunctive relief blocking the merger, rescission in the event the merger did go forward, an order requiring the defendants to disgorge all benefits that they may have received as a result of the transaction, costs and disbursements, including attorneys’ fees, and any damages as may have been sustained.
By an order on consent dated April 12, 1988, the trial court certified the class action for purposes of settlement and defined the class as consisting of Colt’s common shareholders as of March 1, 1987. The court noted that the prerequisites for a class action under CPLR 901 had been satisfied in this case. The court ordered that all members of the class be given notice of the proceeding and enjoined all class members from filing any other lawsuit in any other jurisdiction based on the facts giving rise to the New York-based class action.
The parties to the action on April 29, 1988 prepared a stipulation and agreement of compromise and settlement, based on an earlier Memorandum of Understanding. In substance, the agreement provided: (1) that Colt Holdings Inc. agreed to reduce, from $12 million to $10 million, the amount that it would be entitled to receive as reimbursement if the merger agreement were terminated; (2) Colt Holdings Inc. agreed to waive certain conditions to the offer that permitted Colt Holdings to terminate the offer or refuse to make payment for tendered shares if any change occurred in the operations or condition of Colt or if any material representations made in the merger agreement were not true and correct; (3) defendants agreed not to oppose plaintiffs’ application for attorneys’ fees in the amount of $425,000; and (4) plaintiffs agreed to the dismissal, with prejudice, of the class action, and to the release of all claims that could be asserted by the class regarding the offer and the merger.
By order dated May 10, 1988, the trial court redefined the class to include all Colt common shareholders as of March 1, 1988, scheduled a hearing for June 15, 1988 to determine whether the proposed settlement was fair and reasonable, and approved a Notice of Pendency of Action, Class Action Deter *190 mination, Proposed Settlement of Class Action and Settlement Hearing that had been prepared by the parties and appended to the stipulation of settlement. The court ordered that this notice be published in the national editions of the New York Times and Wall Street Journal on or before May 17, 1988.
Merritt learned of the pendency of the class action and of the proposed settlement by reading the notice contained in the May 17 edition of the Wall Street Journal. Merritt’s attorneys sent a registered letter to the trial court, dated May 27, requesting exclusion from the class. On June 9, Merritt filed a separate action for damages against Colt and other defendants in the United States District Court for the Western District of Missouri. One day later, on June 10, Colt’s shareholders approved the merger.
On June 15, 1988, the Trial Judge signed an order denying Merritt’s application for exclusion from the class. After conducting the settlement hearing, the court approved the settlement and the request for attorneys’ fees. In the judgment, the trial court dismissed the class complaint with prejudice and enjoined class members and their successors-in-interest from asserting any "class, derivative, or individual claim for violations of federal, state, or other law, or of the common law * * * which has been or might have been asserted in the actions in connection with, arising out of or in any way related to * * * the leveraged buyout of Colt, the Agreement and Plan of Merger * * * the Offer to Purchase all outstanding shares of Colt common stock * * * the merger of Colt Transition Inc. with and into Colt * * * the consideration received or to be received by any Colt shareholder pursuant to the Offer or the Merger and the disclosures made in connection with the Offer or the Merger.” The judgment released all claims against "each individual defendant, Colt, [Colt] Holdings, Morgan Stanley Group, Inc., and The Morgan Stanley Leveraged Equity Fund II, L.P. and their respective agents, servants, attorneys, investment advisors (including, without limitation, The First Boston Corporation), current and former officers, directors and employees, partners, subsidiaries, affiliates, stockholders, heirs, executors, representatives, successors and assigns and each trust or estate in which any individual defendant has any interest.” Merritt appealed the assorted orders and judgments that denied its opt-out request, bound it to the settlement agreement and precluded it from asserting its own damage claims. The Missouri action, while currently pending, is in abeyance pending the outcome of this appeal.
*191 The Appellate Division, First Department, ruled in Merritt’s favor (155 AD2d 154). The court stated that the merger on June 10 mooted out the class’ equitable claims and left remaining only the request for fees and expenses, which the court categorized as a claim for damages. Consequently, the court concluded that Merritt had a due process right to receive notification of the class action and to seek exclusion from the class, citing Phillips Petroleum Co. v Shutts (472 US 797).
We agree with the Appellate Division that the Supreme Court’s analysis in Shutts is relevant in determining whether Merritt had a right to opt out of the class. We believe, however, that the Appellate Division rested its reading of Shutts, and consequently its holding, upon a faulty premise— that the June 10 merger mooted the class’ equitable claims and converted the entire action into one for damages. The only element of the complaint that became moot upon consummation of the merger was the request for an injunction preventing the merger from going forward. The class’ request for rescission, also an equitable remedy (see generally, Dobbs, Remedies § 4.3, at 254-256), certainly remained viable and indeed only became tenable after the merger was completed. Had the trial court not given its approval to the settlement, it is at the very least possible that the class would have pursued its action against the defendants and ultimately obtained rescission of the merger. It is not our role at this juncture to consider the merits of such a claim or to pass upon the likelihood that rescission would have been granted under the facts of this case. We note only that the class requested in its complaint that the court rescind the merger if it went forward and that this prayer for relief survived the shareholder vote approving the merger. This alone, then, undermines the Appellate Division’s conclusion that the merger converted the action into one for damages.
We note further that the request for fees and expenses contained in the consolidated class complaint was improperly characterized by the Appellate Division as a claim for damages. " '[T]he foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation’ ” (Mills v Electric Auto-Lite, 396 US 375, 392-393, quoting Sprague v Ticonic Natl. Bank, 307 US 161, 166).
*192 Having determined that the Appellate Division erred as a matter of law in concluding that the relief sought by the class in this case lost its equitable character when the merger was consummated on June 10, we must now consider a question that the Appellate Division did not: whether a member of a class that is seeking predominantly equitable relief has a due process right to opt out of the class.
This question was expressly left open by the United States Supreme Court in Phillips Petroleum Co. v Shutts (supra). The Court held in that case that in a State court class action for money damages, an out-of-State class member with no ties to the forum State could nonetheless be bound by a judgment entered there, provided he was adequately represented (see, Hansberry v Lee, 311 US 32, 42-43, 45) and had notice of the action "plus an opportunity to be heard and participate in the litigation, whether in person or through counsel.” (472 US, at 812.) In addition, "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out’ or 'request for exclusion’ form to the court.” (Id.) But in a footnote to the majority opinion, the Court stated explicitly that its holding was "limited to those class actions which seek to bind known plaintiffs concerning claims wholly or predominately for money judgments.” (Id., at 811, n 3.) The Court "intimate[d] no view concerning other types of class actions, such as those seeking equitable relief.” (Id.)
"The class suit was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable.” (Hansberry v Lee, 311 US 32, 41, supra; see also, Stern v Carter, 82 AD2d 321, 325-327 [Titone, J.].) The Supreme Court’s distinction in Shutts between class actions seeking equitable and monetary relief is consistent with the pattern in State class action statutes and in rule 23 of the Federal Rules of Civil Procedure to accord varying degrees of procedural protection to class members depending upon the relief sought by the class. For example, the 1938 Federal Rules of Civil Procedure gave recognition to three types of class actions, which were known as "true,” "hybrid” and "spurious,” imposing different requirements and giving different binding effect to the judgments in each of these three categories (see, e.g., Kennedy, Class Actions: The Right to Opt Out, 25 Ariz L Rev 3, 14-15). The "true” class action was *193 defined as involving "joint, common or secondary rights,” where, but for the class action device, the joinder of all interested parties would have been required. The "true” class action was mandatory in the sense that class members were bound by the judgment and were not given an opportunity to opt out of the class (id., quoting 3B Moore’s Federal Practice ][ 23.08, at 23-2505 app [2d ed 1982]; see also, Advisory Comm Note to 1966 Revision of Fed Rules Civ Pro, rule 23, at 39 FRD 98).
The "hybrid” class action did not involve joint or common rights; rather, it involved " 'several’ rights related to 'specific property’ ” (see, Advisory Comm Note, op. cit., at 98). This class action was partially mandatory in that "the member’s interests would be bound to the extent of the disposition of property or a fund within the jurisdiction of the court, but otherwise the member’s interest would not. be bound” (see, Kennedy, op. cit., at 14-15). By contrast, the "spurious” class action, involved " 'several’ rights affected by a common question and related to common relief’ (Advisory Comm Note, op. cit., at 98). Prior to the 1966 amendment of the Federal Rules, members of this class were not given the opportunity to opt out of the class per se; rather, they would not be bound by the judgment unless they actually "opted in,” thereby affirmatively consenting to be bound (id.).
The 1966 amendments to rule 23 changed the 1938 scheme dramatically, but again gave class members varying degrees of procedural protection depending upon the posture of the parties and the exact nature of the relief sought by the class. The amended rule defined three types of class action, known generally as the (b) (1), (b) (2) and (b) (3) class actions based upon their placement within the rule. In the (b) (1) class action, which authorizes class certification to prevent "inconsistent or varying adjudications” or individual judgments that would threaten the interests of others not party to the litigation, class members are not granted a right to opt out of the class and there is no requirement that each class member be given notice of the pendency of the action. Similarly, there is no right to notice or opt out in a Federal class action brought under rule 23 (b) (2), which applies to actions for equitable or declaratory relief. Only in class actions brought under rule 23 (b) (3) are notice and opt out mandated. In these class actions, the certifying court has determined "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a *194 class action is superior to other available methods for the fair and efficient adjudication of the controversy.”
New York’s class action statute (CPLR 901-909) has much in common with Federal rule 23 (see generally, Friar v Vanguard Holding Corp., 78 AD2d 83, 90-96; see also, Brandon v Chefetz, 106 AD2d 162, 168-171). The prerequisites to the filing of a New York class action are virtually identical to those contained in rule 23 (compare, CPLR 901 and Fed Rules Civ Pro, rule 23 [a]). First, the class must be "so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.” Second, common questions of law or fact must predominate over individual claims. Third, the claims of the representative parties must be typical of those of the class as a whole. Fourth, the representatives must fairly and adequately represent the class. Finally, the class action must be superior to other methods of settling the controversy (see, Weinberg v Hertz Corp., 116 AD2d 1, affd 69 NY2d 979; Friar v Vanguard Holding Corp., supra, at 96-100).
More importantly for our purposes here, however, the New York statute also looks to the relief sought by the class in determining what process is due the class members. Section 904 (a) deals with class actions brought predominantly for injunctive or declaratory relief and provides that in such an action "notice of the pendency of the action need not be given to the class” unless the court believes notice to be necessary and determines that the cost of notice will not prevent the action from going forward. Subdivision (b) applies to all other class actions and provides that "reasonable notice” must be given according to the instructions of the court.
Unlike rule 23, the New York statute does not specifically mandate opt out for cases of a certain type. The statute clearly contemplates, however, that a Judge may choose to exercise discretion to permit a class member to opt out of a class (see, CPLR 903 ["(w)hen appropriate the court may limit the class to those members who do not request exclusion from the class within a specified time after notice”]; CPLR 904 [c] [III] [in considering the type of notice to be given to class members, the court should consider "the stake of each represented member of the class, and the likelihood that significant numbers of represented members would desire to exclude themselves from the class or to appear individually”]).
The question left open by the Supreme Court’s holding in Shutts, then, is whether the jurisdictional and due process *195 concerns addressed by that decision effectively eliminate the mandatory class action as a matter of constitutional law, despite the fact that both State and Federal governments have for years recognized the need for mandatory classes where certain types of relief are sought. We conclude that the Trial Judge committed no error in refusing to give Merritt the opportunity to exclude itself from the class when it was first certified because there is no due process right to opt out of a class that seeks predominantly equitable relief.
In arriving at this decision, we look to the reasons for treating equitable relief differently from damage relief in this context. When a class seeks to compel certain behavior on the part of an entity, whether it be a governmental agency or a private corporation, certain considerations come into play that distinguish the situation from a private damage suit. First, because the class seeks to enjoin actual conduct that it considers to be detrimental to the class, there is an interest in consolidating the action in a single forum in order to avoid the possibility of conflicting judgments from different jurisdictions which would subject the defendants to varying and possibly inconsistent obligations (see, e.g., Weber, Preclusion and Procedural Due Process in Rule 23 (b) (2) Class Actions, 21 U Mich J of L Reform 347, 366-367). So long as the Judge certifying a class seeking predominantly equitable relief makes a finding that the prerequisites to bringing a class action — numerosity, predominance, typicality, adequacy of representation and superiority — are satisfied (see, Friar v Vanguard Holding Corp., supra), we believe that the due process rights of the class members, whatever their ties to the forum State, are protected. With claims of this kind, a judgment benefits the class as a whole, and any interest in promoting individual control of litigation is outweighed by the importance of obtaining a single, binding determination.
Further, where a class action suit seeks to bind defendants to a certain course of conduct, the resolution of that action, especially if the case is settled before trial, will involve the careful fashioning of a remedy that accommodates both the class’ and the defendants’ interests. That was certainly the case here, where the parties worked out a settlement that accorded the class relief that was primarily equitable in nature but at the same time recognized the interests of the defendants in having the merger proceed. To permit limitless collateral challenges under these circumstances would greatly diminish the possibility that complicated class actions for *196 equitable relief would ever settle before trial, because it would be likely that compromises carefully arrived at would be unraveled by subsequent litigation in other jurisdictions. The specter of later, equally binding litigation in different jurisdictions around the country would doubtless inject a note of uncertainty into class actions for equitable relief and would upset expectations on both sides that a final judgment ordering specific conduct could ever be truly final (see, Note, Developments in the Law — Class Actions, 89 Harv L Rev 1318, 1400-1401).
Our review of the complaint convinces us that at the time this class action was certified, the class was primarily seeking injunctive relief. As noted above, the court was under no statutory duty to grant Merritt the opportunity to opt out of the class. Because of the distinct concerns that come into play when a class seeks primarily equitable relief, we conclude that there was similarly no due process constitutional right to opt out of the class at the time the class was certified.
It does not follow from the foregoing, however, that the court’s approval of the final settlement was proper. ”[0]ne of the strengths of CPLR article 9 is its flexibility. A decision granting class action status is not immutable and if later events indicate that the decision should be reversed, altered or amended, requisite relief is authorized.” (Friar v Vanguard Holding Corp., supra, at 100.) Specifically, CPLR 902 authorizes the court to alter or amend the order granting certification, CPLR 906 permits the court to sever issues for class determination or to divide the class into subclasses, and CPLR 902 permits the court to make, alter, or amend any order dealing with procedural matters (see, Friar v Vanguard Holding Corp., supra, at 100).
This case would be much easier if the judgment purported simply to preclude the relitigation of the class members’ equitable claims. In a case of that kind, the foregoing analysis would compel the conclusion that Merritt was not entitled to opt out of this action and that Merritt is precluded from bringing any individual action for injunctive relief in any other forum, despite the fact that it does not possess minimum contacts with New York State. That, however, is not this case, and Merritt’s lack of contacts with New York troubles us enormously when we consider the fact that the settlement purports to extinguish its rights to pursue a damage remedy as well.
*197 We are well aware of the fact that we can neither dictate nor predict the res judicata effect that the New York judgment will be given by the Federal court in Missouri (see, Restatement [Second] of Judgments § 86 [2], comment e). What we can do, however, is to review the trial court’s determination that this settlement was fair, reasonable, and adequate and decide whether its decision to approve the settlement was .error in light of the circumstances present in this case.
We hold that the trial court did err as a matter of law by seeking to bind an absent plaintiff with no ties to New York State to a settlement that purported to extinguish its rights to bring an action in damages in another jurisdiction. We reach this conclusion based on our consideration of the terms of the settlement reflected in the judgment, on our reading of Shutts, and on our belief that the Supreme Court in that decision intended to afford substantial protections to out-of-State plaintiffs in State class action suits.
The settlement in this case gave class members relief that was essentially equitable in nature, but exacted as a price for that relief a concession that the class members could not pursue damage claims based on the merger. This aspect of the settlement poses special difficulties because while contained in an agreement granting largely equitable relief, it nonetheless impinges upon a distinct right — the right to pursue a claim in damages. Thus, to the extent that the terms in this settlement had an impact upon the entirely separate and distinct right of the class members to pursue damage claims, thé Supreme Court’s analysis in Shutts and the due process concerns discussed in the body of that opinion become relevant.
In Shutts, the Court acknowledged that a class member’s cause of action was a constitutionally protected property interest (472 US, at 807). Although the Court held that an absent class member need not possess minimum contacts with the forum State to be bound by a judgment in damages obtained by the class, the Court also required that certain procedural prerequisites be satisfied before the class member could be bound, including an opportunity to be excluded from the class. In this case, the court denied Merritt the opportunity to exclude itself from a settlement that extinguished rights the Supreme Court has recognized are deserving of constitutional protection. That the settlement arose out of a class action seeking equitable relief does not change the fact that property rights entitled to due process protection were *198 implicated by the settlement’s terms. Thus, we believe that the Supreme Court’s holding in Shutts controls our analysis of the damage aspects of this case and that the due process concerns that motivated the Court in that case also have a place in the disposition of this one.
Despite the fact that Merritt had notice of the action and could have chosen to appear to contest the settlement, we do not believe that this was sufficient to protect Merritt’s property interest in its cause of action in damages against Colt and other parties involved in the merger. The interest in obtaining a single binding judgment and in satisfying the expectations of the parties that such a judgment precludes additional litigation is not sufficiently compelling for us to ignore the jurisdictional and procedural impediments to binding out-of-State class members to class settlements such as this one without giving them the opportunity to exclude themselves from the class. CPLR article 9 is remarkably flexible and provides for a wide range of procedural and administrative approaches in the handling of class action disputes. The Trial Judge, for example, could have created subclasses instead of seeking to bind all class members to a settlement of this kind (see, CPLR 906). To adhere to a rigid view of the efficacy of the class action device without considering the jurisdictional and due process implications of that position was error.
Our recognition that the class complaint here sought predominantly equitable relief in no way alters our conclusion that it was erroneous for the trial court to approve a settlement that purported to extinguish Merritt’s damage claims. By precluding out-of-State class members from litigating damage claims without giving them a chance to opt out of the class, the settlement negated the long-standing practice of distinguishing between class actions for monetary and equitable relief and granting varying degrees of procedural protection depending upon the relief sought. If the class complaint had sought only monetary relief or both substantial monetary relief and equitable relief, Shutts would have required that Merritt be given an opportunity to opt out of the class once it was certified. The mere fact that the relief initially demanded was largely equitable should not permit the court to circumvent the Supreme Court’s holding in Shutts and bind Merritt to a settlement that eliminates constitutionally protected property interests without due process. The degree of due process accorded plaintiffs and the binding effect consequently accorded settlements should not be made to depend wholly *199 upon the way in which class counsel styles an action through the mechanism of the class complaint. Litigants should not be able to subvert substantial constitutional rights by sleight of hand and artful pleading.
In conclusion, the Trial Judge was not required to give Merritt an opportunity to opt out of the class at the time that the class was certified, because at that juncture, the relief sought was predominately equitable. Given the class complaint as filed, the court properly considered the value of consolidating the action in a single forum and reaching one binding determination. However, once the parties presented the court with a settlement that accorded equitable relief and in turn required the class members to give up all claims in damages, the nature of the adjudication changed dramatically. We conclude that the trial court erred when it approved a settlement of this kind without affording Merritt the due process protections outlined in Shutts.
We have considered the parties’ remaining arguments and find them to be without merit. Accordingly, the order of the Appellate Division should be modified, with costs to respondent, by (1) vacating so much thereof as grants Merritt’s request to be excluded from the class and directs that Merritt is not bound by the class action insofar as it seeks equitable relief, (2) denying Merritt’s request to be excluded from the class, and (3) adjudging that Merritt is riot bound by the class action settlement insofar as Merritt seeks to assert an action for damages. As so modified, the Appellate Division order should be affirmed.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order modified in accordance with the opinion herein and, as so modified, affirmed, with costs to respondent.