[681 NYS2d 170]

Ricky Brown et al., on Behalf of Themselves and All Others Similarly Situated, Appellants-Respondents, v State of New York, Respondent-Appellant. (Claim No. 86979.)

Third Department, December 3, 1998

### APPEARANCES OF COUNSEL

*Whiteman, Osterman & Hanna,* Albany (*Scott N. Fein* of counsel), for appellants-respondents.

*Dennis C. Vacco, Attorney-General,* Albany (*Denise A. Hartman* of counsel), for respondent-appellant.

### OPINION OF THE COURT

SPAIN, J.

The factual and procedural history of this case is set forth in decisions of the Court of Appeals and this Court and only the pertinent facts will be repeated herein (*Brown v State of New York,* 89 NY2d 172; *modfg* 221 AD2d 681 [hereinafter *Brown I*]). In September 1992, a 77-year-old woman was reportedly attacked at knifepoint at a home just outside the City of Oneonta, Otsego County. The victim described her assailant as an African American male and the police determined that the as-

sailant may have cut his hand or forearm during the incident. On the basis of the information supplied by the victim regarding her assailant's skin color, the police began their investigation by obtaining the names of all the male African American students enrolled at the State University of New York, College at Oneonta. The State Police, local police and campus police proceeded to locate, stop, interrogate and inspect the hands and forearms of each individual on the list. After the search was unsuccessful, the police ultimately conducted a sweep of the City and surrounding area, continuing to stop all African American men for investigative purposes. No suspect has been arrested to date.

Claimants commenced a constitutional tort action for damages alleging that the conduct of the law enforcement officials was racially motivated. The Court of Claims, in an order dated March 30, 1994, dismissed the claims holding, *inter alia*, that constitutional torts are not cognizable in the Court of Claims; this Court affirmed that holding. The Court of Appeals, in *Brown I*, ultimately reinstated the constitutional tort claims deeming them to have been properly pleaded (*see, Brown I, supra*, at 188-192). Claimants then moved pursuant to CPLR article 9 to, *inter alia*, declare the litigation a class action. The Court of Claims determined that the 67 claimants who were currently before the court were entitled to class action status with regard to the seventh, eighth and eleventh causes of action, but only with regard to the issue of liability. The court also determined that those claimants who filed their notice of intention to file a claim but who did not timely file a notice of claim met the jurisdictional requirements of the Court of Claims Act and that the Statute of Limitations for a State constitutional tort is three years.

Although neither claimants nor the State sought a ruling with respect to the standard of proof ultimately to be applied at trial, the Court of Claims raised the issue *sua sponte* stating that "[w]hile there is no question that the equal protection cause of action allegations present a common question of law * * * and although courts generally do not undertake a discussion of the merits of the claim on a motion requesting certification as a class, this Court may prevent future controversies over discovery, and provide some guidance, by addressing the merits now". Quoting portions of a recent decision in related Federal litigation, the Court of Claims concluded that in order for claimants to prevail in their equal protection claims they must establish that they were treated differently than a non-

minority group in a similar situation. Claimants have appealed from that part of the order setting forth the standard of proof and the State has cross-appealed from every other part of the order.

At the outset, we conclude that the Court of Claims properly determined that the Statute of Limitations for a State constitutional tort is three years under CPLR 214 (5). In *Brown I*, the Court of Appeals held that "[a] constitutional tort is any action for damages for violation of a constitutional right against a government or individual defendants" (*Brown I*, 89 NY2d 172, 177, *supra*), and that "State courts that have implied damage causes of action have traditionally rested their decisions on * * * [an] analogy to a *Bivens* action" (*id.*, at 187).* The United States Supreme Court has held that claims brought under 42 USC § 1983 should borrow the State Statute of Limitations for personal injury actions (*see, Wilson v Garcia*, 471 US 261, 266-280); where a State has more than one Statute of Limitations for specified intentional torts, and a residual statute for all other personal injury actions, the residual or general personal injury Statute of Limitations applies (*see, Owens v Okure*, 488 US 235, 236). The Second Circuit Court of Appeals pointed out that although 42 USC § 1983 actions and *Bivens* actions are not "precisely parallel", they are both designed to provide redress for constitutional violations; therefore, since section 1983 claims are covered by CPLR 214 (5), *Bivens* actions are as well (*Chin v Bowen*, 833 F2d 21, 24, 22-24). In our view, as the Court of Appeals has held that an action pursuant to 42 USC § 1983 is governed by the limitation period set forth in CPLR 214 (5), the same Statute of Limitations is appropriate for a constitutional tort under our State Constitution. CPLR 214 (5) is New York's limitation period governing general personal

---

* Reference is to the holding in *Bivens v Six Unknown Fed. Narcotics Agents* (403 US 388), where the United States Supreme Court implied a cause of action for damages against Federal officials who violated the search and seizure provisions of the Fourth Amendment. The underlying rationale for the decision, in simplest terms, is that constitutional guarantees are worthy of protection on their own terms without being linked to some common-law or statutory tort, and that the courts have the obligation to enforce these rights by ensuring that each individual receives an adequate remedy for violation of a constitutional duty. If the remedy is not forthcoming from the political branches of government, then the courts must provide it by recognizing a damage remedy against the violators much the same as the courts earlier recognized and developed equitable remedies to enjoin unconstitutional actions. Implicit in this reasoning is the premise that the Constitution is a source of positive law, not merely a set of limitations on government (*Brown I, supra*, at 187).

injury actions and, therefore, a three-year Statute of Limitations applies to a State constitutional tort claim.

■ We further conclude that the Court of Claims properly tolled the Statute of Limitations for claimants' cause of action based upon the fact that filing the claim within the applicable two-year period (*see*, Court of Claims Act § 10 [3]) would be meaningless in light of its order filed March 30, 1994, which had dismissed the claim. In its reasoning, the Court of Claims followed a Second Department decision which held that the Statute of Limitations is tolled where a cause of action has accrued, but was "temporarily extinguished as a result of an erroneous court order, which was later reversed" (*Roldan v Allstate Ins. Co.*, 149 AD2d 20, 32). Thus, the Statute of Limitations is tolled where the limitations would run against a person unable to bring an action based on a prior ruling (*see*, *id.*, at 32). Although it is well established that a court may not extend a Statute of Limitations or invent tolling principles, some tolling provisions are based upon common-law doctrines (*see*, *id.*, at 33). We regard the doctrine set forth by the Court of Claims as one such principle, and it is appropriate in this case.

■ We also conclude that the Court of Claims properly held that the individuals who filed notices of intention to file a claim but who did not timely file a notice of claim met the jurisdictional filing requirements of the Court of Claims Act. Court of Claims Act § 10 (8) (a) states, in part, that: "[a] claimant who timely serves and files a notice of intention but who fails to timely serve or file a claim may, nevertheless, apply to the court for permission to treat the notice of intention as a claim." The Court of Claims may treat a notice of intention to file a claim as a notice of claim as long as the notice of intention adequately sets forth the time and place and as long as the State is not prejudiced by an omission (*see*, *Barski v State of New York*, 43 AD2d 767, 767-768). Here, the notice of intention states that the rights of each individual were violated in or near Oneonta during a five-day period. We agree with the observations of the Court of Claims that the State has been aware of the lawsuit, has been investigating the incidents since shortly after they occurred and that the issues related to liability are generally identical with respect to each claimant. In our view, the State has not been "deceived or misled and its rights have not been prejudiced" (*id.*, at 768). Accordingly, the notices of intention to file a claim qualify as claims.

■ We next reject the State's contention that the claims asserted by claimants do not meet the statutory prerequisites for

class certification. The determination of whether to grant class action status lies in the sound discretion of the trial court (*see,* CPLR 901 [a] [5]; *Lauer v New York Tel. Co.,* 231 AD2d 126, 130). Notably, CPLR article 9 is to be liberally construed (*see, Matter of Colt Indus. Shareholder Litig.,* 155 AD2d 154, 158-159, *mod on other grounds* 77 NY2d 185) and any error should be resolved in favor of allowing the class action (*see, Lauer v New York Tel. Co., supra,* at 130). Here, the Court of Claims properly exercised its discretion when it concluded that claimants satisfied all the requisite criteria detailed in CPLR 901 (a) (*see, id.,* at 130). In our view, common questions of law and fact with respect to the issue of liability are substantial and predominate over any questions affecting only individual members of the class (*see, Friar v Vanguard Holding Corp.,* 78 AD2d 83, 96-100).

Next, we find persuasive claimants' assertion that their appeal of the burden of proof determination made by the Court of Claims is properly before this Court. Where a court directly passes upon an issue which is necessarily involved in the final determination on the merits, it becomes "the law of the case" and is appealable (*see, Hollenbeck v Aetna Cas. & Sur. Co.,* 215 App Div 609, 612, *affd* 243 NY 540). The doctrine of the "law of the case" applies to various stages of the same litigation (*see, Matter of McGrath v Gold,* 36 NY2d 406, 413). The doctrine is sometimes referred to as "a kind of intra-action res judicata" (Siegel, NY Prac § 448, at 680 [2d ed]); its purpose is to avoid the retrial of issues already determined in the same case (*see, Fadden v Cambridge Mut. Fire Ins. Co.,* 51 Misc 2d 858, 860, *affd* 27 AD2d 487). Its application is exclusively to questions of law and makes a legal determination in a given case binding upon all parties (*see, State of N. Y. Higher Educ. Servs. Corp. v Starr,* 158 AD2d 771, 772). Therefore, the doctrine of law of the case would preclude further litigation of the determination by the Court of Claims of the burden of proof imposed upon claimants when their claim returns to that court for trial.

Additionally, although "an order which merely determines the admissibility of evidence, 'even when made in advance of trial on motion papers, constitutes, at best, an advisory opinion which is [not] appealable'" (*Hargrave v Presher,* 221 AD2d 677, 678, quoting *Savarese v City of N. Y. Hous. Auth.,* 172 AD2d 506, 509), "a pretrial order which limits the scope of the issues to be tried is appealable" (*Hargrave v Presher, supra,* at 678; *see, Strait v Arnot Ogden Med. Ctr.,* 246 AD2d 12; *Siewert v Loudonville Elementary School,* 210 AD2d 568, 569). Here,

the issue of what must be proven by claimants in order for them to prevail on their equal protection claim is more than advisory, it is a decision which directly relates to the final determination of the merits of this case and, as such, affects a substantial right of claimants; it is therefore appealable (see, CPLR 5701 [a] [2] [v]).

Moving next to the merits of that issue, we conclude that the Court of Claims erred in imposing the wrong burden of proof on claimants. In determining whether particular governmental action violates the personal guarantee of equal protection, the general rule is that where the governmental action reflects a classification which is rationally related to a legitimate State interest, such action will be sustained (see, Cleburne v Cleburne Living Ctr., 473 US 432, 439-441). However, where the challenged governmental action classifies persons by gender, it is sustainable only where it is "substantially related to a sufficiently important governmental interest" (id., at 441). Finally, governmental action which classifies persons by race is subject "to strict scrutiny and will be sustained only if [it is] suitably tailored to serve a compelling state interest" (id., at 440). "[T]he Fourteenth Amendment requires strict scrutiny of all race-based action by state and local governments" (Adarand Constructors v Pena, 515 US 200, 222). "The strictest standard of review, requiring the State to show that the classification is necessary to promote a compelling governmental interest, traditionally applies where the classification is deemed suspect, i.e., based on race, alienage or nationality [citation omitted]" (Matter of Joseph LL., 97 AD2d 263, 264-265, affd 63 NY2d 1014). When considering claims of equal protection violations under our State Constitution, the threshold decision must be which standard of review should be applied by the court (see, Montgomery v Daniels, 38 NY2d 41, 59).

Here, the State has admitted that each person stopped was stopped on the basis of race alone; thus, discriminatory enforcement is established as a matter of law (see, e.g., People v Acme Mkts., 37 NY2d 326, 331). In our view, claimants, in proving their cause of action, should not be held to the "formidable task", as the Court of Claims described it, of demonstrating that they were treated differently than a similarly situated nonminority group. The proper standard for the Court of Claims to apply in this case is the strict scrutiny test, which places the burden on the State to prove that the means used in the investigation were necessary to promote a compelling State interest (see, Montgomery v Daniels, supra, at 59).

MIKOLL, J. P., CREW III and YESAWICH JR., JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as imposed upon claimants the burden of proof requiring them to identify a similarly situated nonminority group that was treated differently; the burden of proof is imposed upon the State to prove that the means used in the investigation were necessary to promote a compelling State interest; and, as so modified, affirmed.