OPINION OF THE COURT
George B. Ceresia, Jr., J.
On March 30, 2004 correction officers posted a memorandum in petitioner’s housing unit forbidding inmates to wear cornrow *192 braids if the inmate’s hair fell below the natural hairline. Petitioner subsequently filed a grievance with respect to the memorandum. His administrative appeal to the Superintendent was denied, as was his appeal to the Central Office Review Committee. The petitioner has commenced the above-captioned CPLR article 78 proceeding to review the determination.
Petitioner, an African-American, argues that the cornrow braid hair style is an expression of his culture and a part of his personal identity. He indicates that cornrow braids date back over 3,000 years to ancient Egypt. He indicates that they are “an appropriate expression of his heritage, culture and racial pride as a Black Man.” He maintains that the denial of his grievance infringes upon his First Amendment freedom of speech, and right to federal equal protection under the law. In his view, respondent’s determination was dictated by the personal taste of an administrative official who does not possess the same belief system as that of petitioner’s culture. Petitioner also cites an unpublished decision in a case entitled Matter of Allah v Goord (Sup Ct, Albany County, Index No. 3150-03, Lament, Acting J.S.C.) in which Justice Dan Lamont found the applicable directive governing inmate hair styles (Directive 4914) did not prohibit cornrow braids. In petitioner’s view, the prohibition of cornrow braids is discriminatory and subjects petitioner to an arbitrary, unreasonable and capricious regulation.
A prisoner retains First Amendment rights “not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.” (Pell v Procunier, 417 US 817, 822 [1974]). Phrased differently, “[1]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a ‘retraction justified by the considerations underlying our penal system’ ” (Wolff v McDonnell, 418 US 539, 555 [1974], quoting Price v Johnston, 334 US 266, 285 [1948]). “But though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime” (id.). “There is no iron curtain drawn between the Constitution and the prisons of this country” (id. at 555-556). “Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race” (id. at 556, citing Lee v Washington, 390 US 333 [1968]).
The Fourteenth Amendment of the Federal Constitution forbids states from denying to any person within their jurisdic *193 tian the equal protection of the laws, but does not prevent the states from making reasonable classifications among persons (Western & Southern Life Ins. Co. v State Bd. of Equalization of Cal., 451 US 648 [1981]). Where the action under review involves a suspect class, it is subject to strict scrutiny, requiring the state to show that the classification is tailored to promote a compelling governmental interest (Brown v State of New York, 250 AD2d 314, 321 [3d Dept 1998]). Where, however, the action under review does not involve a suspect class or fundamental right, it is not subject to strict judicial scrutiny, but rather is examined using the rational basis standard to determine if the action violated the Equal Protection Clause (see Massachusetts Bd. of Retirement v Murgia, 427 US 307 [1976]; Maresca v Cuomo, 64 NY2d 242, 250 [1984]).
As stated in Brown v State of New York (250 AD2d 314 [3d Dept 1998]):
“[Governmental action which classifies persons by race is subject ‘to strict scrutiny and will be sustained only if [it is] suitably tailored to serve a compelling state interest’ ([City of Cleburne, Tex. v Cleburne Living Ctr., 473 US 432,] 440). ‘[T]he Fourteenth Amendment requires strict scrutiny of all race-based action by state and local governments’ (Adarand Constructors v Pena, 515 US 200, 222). ‘The strictest standard of review, requiring the State to show that the classification is necessary to promote a compelling governmental interest, traditionally applies where the classification is deemed suspect, i.e., based on race, alienage or nationality . . .’ (Matter of Joseph LL., 97 AD2d 263, 264-265, affd 63 NY2d 1014).” (Brown v State, supra at 321.)
It must also be noted, however, that “when a prison regulation impinges on inmates’ constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.” (Turner v Safley, 482 US 78, 89 [1987].) “[S]uch a standard is necessary if ‘prison administrators . . . , and not the courts, [are] to make the difficult judgments concerning institutional operations.’ ” (Id., quoting Jones v North Carolina Prisoners’ Labor Union, Inc., 433 US 119, 128 [1977].) “The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.” (Overton v Bazzetta, 539 US 126, 132 [2003].) The foregoing is applicable to petitioner’s constitutional right to freedom of speech.
In this instance, it is undisputed that the cornrow hair style is permitted, provided it is worn close to the scalp, rather than *194 in braids. Nor is there any other evidence in the record to suggest that the prohibition of cornrow braids is racially motivated. Under such circumstances, the court is of the view that the dispute involving the cornrow hair braid style does not involve, directly or indirectly, a racial classification. The court finds, on the instant record, that petitioner has failed to demonstrate that the government action, as applied to him, involves a racial classification requiring application of the heightenéd strict scrutiny standard. The court therefore finds that the instant determination must be reviewed under the rational basis standard, taking into consideration whether the determination is reasonably related to legitimate penological interests.
Respondent, in opposing the petition, has submitted the affidavit of Mark Vann, a colonel with the New York State Department of Correctional Services. Colonel Vann points out that no provision in Directive 4914 expressly provides for the wearing of cornrows extending below the hairline. He points out that Directive 4914 permits inmates to wear their hair in a ponytail. He also points out that Directive 4914 provides that inmates are subject to hair searches, and during the process of a hair search are required to run their hands through their hair. He indicates that while cornrows tight to the scalp are easily viewed for the presence of contraband, braids severely limit the inspection procedure, impeding correction staff in their efforts. Colonel Vann avers that security may also be compromised from the standpoint that braids can obscure the actual length of an inmate’s hair, creating the appearance of shorter hair. He asserts that this is a concern because it permits inmates to use their hair as an aid to escape, or for other acts of misbehavior. As an example Colonel Vann indicates that long hair had recently been used by an inmate to make a life-like dummy, which was constructed in connection with an escape from Elmira Correctional Facility. Colonel Vann indicates that braids also allow an inmate to suddenly and drastically change the inmate’s appearance which could hamper escape pursuit efforts and/or inmate identification.
Directive 4914 recites in pertinent part as follows:
“2. Hair.
“a. Only basic haircuts will be allowed. Only one straight part will be allowed with no other lines, designs or symbols cut into the hair. In accordance with established barbering guidelines of the Department’s Occupational Training Program, basic *195 haircuts are defined as:
“short, medium and long
“short, medium and long pompadour
“crew
“flat top
“butch
“quo vadis (bald)
“Afro-natural, and “elevation
“Hair may be permitted to grow over the ears to any length desired by the inmate. The corn row style is allowed. The hair must be neatly groomed and kept clean at all times.
“b. Long hair is defined as below shoulder length.
“c. Inmates wearing long hair assigned to work near machinery or food shall be required to wear a hair net. Any other inmate assigned to work near food shall be required to wear either a hat or a hair net.
“d. All inmates wearing long hair will be required to have the hair tied back in a ponytail at all times with a barrette, rubber band or other fastening device approved by the Superintendent.
“Exception: American Indians involved in scheduled and approved Indian culture ceremonies do not have to comply with this restriction.
“e. An inmate may be subjected to a hair search when there is reason to believe that contraband may be discovered by such search. An inmate may be subjected to such search at any time that a pat frisk, strip search, or strip frisk is being conducted. Consistent with Directive # 4910, during a pat frisk, an inmate will be required to run fingers through hair. During a strip search, an inmate may be subjected to an inspection of his or her hair. During a strip frisk, an inmate will run his or her hands through the hair.”
Notably, Directive 4914, while specifying a number of hair styles which are permitted, fails to mention braids. The fact that braids are not specifically prohibited does not, in the court’s view, imply that they are permitted. The respondent, through the affidavit of Colonel Vann, has presented adequate and persuasive reasons why braids should not be permitted within a correctional facility—reasons which the court feels compelled to *196 give appropriate due deference. In reviewing the factors set forth in Turner v Safley (supra at 89-90), the court finds that respondents’ determination has a rational basis and is reasonably related to legitimate penological interests. Petitioner has been shown to have alternative means of exercising his rights with respect to how he wears his hair. He may still wear cornrows, provided they do not extend into braids. Respondents have adequately demonstrated the negative impact that accommodation of the petitioner’s right will have on the prison system. The court discerns no “ready alternative” to respondent’s enforcement of Directive 4914. The court finds that the determination to deny petitioner’s grievance is reasonably related to legitimate penological interests and has a rational basis.
The court has reviewed and considered petitioner’s remaining arguments and contentions and finds them to be without merit.
The court finds that the determination was not made in violation of lawful procedure; is not affected by an error of law; and is not irrational, arbitrary and capricious, or an abuse of discretion. The court concludes that the petition must be dismissed.
The court need not address petitioner’s motion for summary judgment, which is denied as moot.
Accordingly it is ordered that petitioner’s motion for summary judgment is denied. Ordered and adjudged that the petition be and hereby is dismissed.