OPINION OF THE COURT
Carol R. Edmead, J.
This legal malpractice action requires an exploration of a rarely applied theory: tolling the statute of limitations based on common-law principles.
In this action, defendant Mintzer Sarowitz Zeris Ledva & Meyers, LLP (the Firm) moves to dismiss the complaint of the plaintiff Billiard Balls Management, LLC, doing business as Slate, pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, or alternatively, CPLR 214 (6) based on the defense of statute of limitations.
Factual Background
In its complaint, Billiard alleges that in 2012, Lizaveta Gershman was injured in a one-car motor vehicle accident, and consequently, commenced a personal injury action against Billiard, Bowlmor Lanes, LLC, and others in Kings County Supreme Court (the underlying action). Billiard notified its insurer, Capitol Speciality Insurance Corporation, of the lawsuit, which in turn, engaged the Firm to assume the defense of Billiard in the underlying action.
*938 Thereafter, an attorney at the Firm, Thomas G. Darmody, Esq., executed a stipulation dated December 27, 2012 (attached to the complaint) as attorneys for Billiard, extending Billiard’s time to answer or move in the underlying action. Thereafter, “upon information and belief,” Capitol Insurance directed the Firm to take no further actions with respect to representation of Billiard, and positioned Billiard to default in answering the underlying complaint.
Billiard later retained counsel, who served an untimely answer which Gershman rejected. Gershman then moved for a default judgment against Billiard, which in turn cross-moved to compel acceptance of its answer.
On May 7, 2014, the trial court (Bayne, J., Sup Ct, Kings County) denied the motion for default judgment and granted Billiard’s cross motion.
However, on appeal by Gershman, the Appellate Division, Second Department reversed the order on September 23, 2015, and found Billiard in default (131 AD3d 1104 [2d Dept 2015]). Billiard’s motion to reargue or for leave to appeal to the Court of Appeals was denied (2016 NY Slip Op 64310[U] [2016]). As a result, Billiard remains in default in the underlying action.
In its instant legal malpractice claim, Billiard alleges that the Firm undertook to represent it, and allowed it to become and remain in default (¶ 19). Specifically, the Firm was negligent in failing to (1) serve a timely answer on Billiard’s behalf, (2) move to withdraw as counsel and seek a stay of the underlying matter pending said application, and/or (3) obtain a consent to change attorney so as to relieve it of its duty to defend Billiard.
In support of dismissal, the Firm argues that no attorney-client privilege ever existed between it and Billiard. The Firm argues that neither the December 27th stipulation, nor a previous December 17, 2012 stipulation it obtained to extend the time to file an answer or move, rendered it attorney of record and, thus, it was not required to comply with CPLR 321 (b) (2) to withdraw as counsel. On December 28, 2012, Billiard received a letter from Capitol Insurance disclaiming coverage. On January 5, 2013, the Firm advised counsel for Gershman that it was not appearing on behalf of Billiard. Thereafter, on November 13, 2013, the Firm “sent letters” indicating that it was not counsel for Billiard and that Billiard should retain *939 counsel.[1] Therefore, as the Firm never appeared on behalf of Billiard, no attorney-client relationship existed to support a legal malpractice claim.
In the alternative, the Firm argues that plaintiff’s action was untimely commenced on April 26, 2016, over three years after the cause of action’s accrual on January 11, 2013, when the answer or motion was due to be filed pursuant to the stipulation. In addition, the action is time-barred because it was filed more than three years after the termination of any purported attorney-client relationship. Capitol Insurance sent its December 28, 2012 letter to Billiard disclaiming coverage. Billiard admitted, in the underlying action, that it was informed of its need to secure counsel and aware of the lack of coverage, and admits that it subsequently retained new counsel. Thus, without representation, the continuous representation doctrine does not apply, and the Firm’s failure to seek leave to withdraw as counsel is not a basis to apply the continuous representation doctrine or required to mark the end of an attorney’s representation.
In opposition, Billiard argues that there was an attorney-client relationship between the parties as of Billiard’s default on January 12, 2013. The time for Billiard to appear was last extended to January 11, 2013, and as such, it was in default on January 12, 2013. The stipulations gave Billiard time to “answer and/or move” but did not mention that the time to “appear” was extended. Thus, the appearance by Billiard was tacitly admitted. Both stipulations also bore the Firm’s name as attorneys for Billiard, and nothing indicates that the appearance by Billiard was in any way limited or restricted. An attorney-client relationship does not depend on a formal retainer agreement.
The final stipulation expired on January 11, 2013 and the Firm did nothing to protect the interests of Billiard and allowed Billiard to be and remain in default. Failure to secure a further stipulation or serve an answer, file a motion in this regard, or do anything to protect Billiard’s interests is prima facie malpractice, and directly caused Billiard to be found in default.
*940 Further, the claim actually accrued when the Appellate Division reversed the lower court’s ruling on September 23, 2015 and found Billiard to be in default. Billiard could not file a malpractice suit prior to such reversal, given that although Billiard could have asserted that there was malpractice, they had not yet suffered, and therefore could not demonstrate any, ascertainable damages until reversal. Thus, any such lawsuit prior to the reversal would have been dismissed.
In reply, the Firm argues that Billiard was well aware that any attorney-client relationship was terminated on December 28, 2012, when the disclaimer letter was sent and Billiard began attempts to resolve its coverage issue. In any event, the attorney-client relationship ended when Billiard admittedly received Mr. Gash’s letter on January 25, 2013, and had sufficient time to obtain new counsel. And, at the time Mr. Gash sent his letter of January 25, 2013, Billiard was not in default, in that no motion for default was filed or order to that effect filed. Furthermore, at the time the Firm advised on January 25, 2013 that it was not representing Billiard, Billiard was not in default and no malpractice was committed. According to the Firm, “At that time, [Billiard] clearly knew that there was no representation and had sufficient time to obtain new counsel” (reply ¶ 16). An untimely filing of an answer is not tantamount to being in default, and no motion was filed or order entered until months after Billiard acknowledged that the Firm was no longer counsel. Plaintiff had an obligation to secure new counsel.
And, Billiard cites no authority for the position that the statute of limitations was tolled until the September 23, 2015 Appellate Division decision.
Discussion
In determining a motion to dismiss a complaint pursuant to CPLR 3211 (a) (7), the court’s role is deciding “whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail” (African Diaspora Mar. Corp. v Golden Gate Yacht Club, 109 AD3d 204, 211 [1st Dept 2013]; Siegmund Strauss, Inc. v East 149th Realty Corp., 104 AD3d 401 [1st Dept 2013]). On such a motion, the court must “accept the facts [as] alleged in the [complaint] as true[,] accord [plaintiff] . . . ‘the benefit of every possible favorable inference,’ ” and “determine only *941 whether the facts as alleged fit [into] any cognizable legal theory” (Siegmund Strauss, Inc. v East 149th Realty Corp., 104 AD3d 401, 403 [2013], supra; Nonnon v City of New York, 9 NY3d 825 [2007]; Leon v Martinez, 84 NY2d 83, 87-88 [1994]).
“[T]o state a cause of action for legal malpractice, [a] complaint must [allege] the negligence of the attorney [,] that the negligence was a proximate cause of the loss sustained!,] and actual damages” (Leder v Spiegel, 31 AD3d 266, 267 [1st Dept 2006], affd 9 NY3d 836 [2007]). To recover damages for legal malpractice, a plaintiff must demonstrate that the attorney defendant “ ‘failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession’ and that the attorney’s breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages” (Pannone v Silberstein, 118 AD3d 413, 414 [1st Dept 2014], citing Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer, 8 NY3d 438, 442 [2007]). It is undisputed that “absent an attorney-client relationship, a cause of action for legal malpractice cannot be stated” (Federal Ins. Co. v North Am. Specialty Ins. Co., 47 AD3d 52, 59 [1st Dept 2007]).
Billiard alleges that the Firm committed legal malpractice by failing to file a timely answer by January 11, 2013, or otherwise move for relief, including to withdraw as counsel. It is uncontested that pursuant to CPLR 321 (b), an attorney of record may be changed by filing with the clerk a consent to the change signed by the retiring attorney and signed and acknowledged by the party. Pursuant to CPLR 321 (b) (2),
“An attorney of record may withdraw or be changed by order of the court in which the action is pending, upon motion on such notice to the client of the withdrawing attorney, to the attorneys of all other parties in the action or, if a party appears without an attorney, to the party, and to any other person, as the court may direct” (emphasis added).
The record clearly contains two stipulations signed by counsel at the Firm acknowledging the Firm’s status as “Attorney” for “Defendants” to wit: Billiard. It is also noted that Billiard alleges that, when the Firm was notified by Capitol Insurance in December 2015 to refrain from further activity, the Firm failed to move to withdraw as counsel and seek a stay of the underlying matter pending said application. According to the underlying Appellate Division order, Gershman moved for a default judgment against Billiard nine months after the time *942 for Billiard to submit an answer expired on January 11, 2013. Although the Appellate Division found Billiard’s delay in answering at certain points of the underlying litigation unreasonable, the decision does not address the alleged duty of, or actions by, the Firm during the period between December 28, 2012 (the issuance of Capitol Insurance’s disclaimer) and January 11, 2013 (the expiration of Billiard’s time to answer). Billiard’s time to answer had already expired by the time of Mr. Gash’s January 25, 2013 letter advising Billiard that the Firm “would not be representing” Billiard (Billiard member Aristotle Hatzigeorgiou aff ¶ 9).
To the degree the complaint alleges that the Firm was engaged to defend Billiard in the underlying action, and that the stipulation identifies the Firm (and its attorneys) as “Attorneys for Defendants” “Billiard Balls Management LLC d/b/a Slate,” and assuming such facts as true as this court must, the court finds that Billiard states a claim for legal malpractice.
The Firm’s reliance on Paine Lbr. Co. v Galbraith (38 App Div 68 [1899]), a Second Department case decided in the 1800s, is misplaced. Paine addressed only the issue of whether an attorney is deemed to have “appeared” in an action on behalf of his client, and not whether an attorney-client relationship existed between counsel and a purported client. In Paine, an attorney initially appeared in the action on behalf of defendant, and obtained from the plaintiff’s attorney four extensions of time for defendant to answer. Thereafter, a different attorney signed an answer on behalf of defendant, which answer was rejected by plaintiff’s attorney on the ground that the defendant had previously appeared in the action by an attorney, who had not been properly substituted. Defendant countered that everything done by the first attorney did not constitute an appearance, and that defendant was free to put in an answer and thus appear in the action by any other attorney he chose. Under the theory that “attorneys in behalf of a defendant in obtaining an extension of time to answer . . . does not constitute a general appearance by such attorney” the Court agreed with the defendant and held that the first attorney,
“in subscribing himself as attorney for defendants [,] may have sufficed to operate as a waiver by defendants of irregularities or even as an affirmative submission to the jurisdiction of the court, ... it was not an appearance which prevented the service of an answer signed by another attorney without *943 substitution” {id. at 70 [emphasis added and citations omitted]).
Therefore, the defendant “had not appeared in the action until he served the answer signed by” the second attorney {id.). Such case simply does not support the contention that there was no attorney-client relationship between the parties.
Therefore, the Firm failed to demonstrate the absence of an attorney-client relationship at the time of Billiard’s default on January 12, 2013.
As to the statute of limitations, this case does not involve the typical tolling provisions such as infancy, insanity, or where a plaintiff moves to file a late notice of claim {see CPLR 208, 204). The tolling at issue herein involves the overruling of a judicial determination by an appellate court.
It is undisputed that a legal malpractice action must be commenced within three years from accrual (CPLR 214 [6]).
A “legal malpractice claim accrues ‘when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court’ [and] this accrual time is measured from the day an actionable injury occurs” (McCoy v Feinman, 99 NY2d 295, 301, 305 [2002] [emphasis added] [“Because (counsel) was negligent in failing to assert plaintiff’s claim to preretirement death benefits in the settlement stipulation or judgment, we conclude that plaintiff suffered actionable injury on the day of the stipulation (June 23, 1987), or at the latest, on the day the judgment incorporating the stipulation was filed in the county clerk’s office (June 14, 1988). Because we perceive no reason that plaintiff’s damages were not then sufficiently calculable to permit plaintiff to obtain prompt judicial redress of that injury, we conclude that plaintiff had a complete cause of action on the day the divorce judgment was filed” (emphasis added)]; Gerschel v Christensen, 143 AD3d 555, 556 [1st Dept 2016] [“Plaintiffs’ claims for legal malpractice . . . accrued at the time of their injury” (emphasis added)]).
Accrual “is not delayed until the damages develop or become quantifiable or certain” (Woodson v American Tr. Ins. Co., 9 Misc 3d 1117[A], 2005 NY Slip Op 51627[U], *2 [Sup Ct, NY County 2005], citing Gilbert Props. v Millstein, 40 AD2d 100 [1st Dept 1972], affd 33 NY2d 857 [1973]; McCoy, see e.g. Aaron v Roemer, Wallens & Mineaux, 272 AD2d 752 [3d Dept 2000] [malpractice claim accrued at time attorney negligently prepared answer to complaint, not at time the money judgment was entered against defendant as a result]).
*944 The Court of Appeals recognizes no exception to measuring the accrual date from the date of injury caused by an attorney’s malpractice (CMI Capital Mkt. Invs., LLC v Buchanan Ingersoll & Rooney P.C., 26 Misc 3d 1202[A], 2009 NY Slip Op 52623[U] [Sup Ct, NY County 2009]).
And, it has been stated, “the Statute of Limitations may not begin to run before all the elements of a cause of action may truthfully be alleged, nor may it continue to run for any period of time during which an element of the cause of action can no longer be truthfully alleged” (Roldan v Allstate Ins. Co., 149 AD2d 20, 26 [2d Dept 1989], citing Homer Eng’g Co. v State of New York, 12 NY2d 508, 510-511 [1963]).
The allegations sufficient to state a legal malpractice claim, and thus the accrual of the cause of action, occurred on January 13, 2013, when the Firm failed to timely answer or move pursuant to the stipulation. Billiard’s lack of awareness of its default status in the underlying action is irrevelant for purposes of determining the accrual date of its malpractice claim (Johnson v Proskauer Rose LLP, 129 AD3d 59 [1st Dept 2015]). Further, to the extent that Billiard’s malpractice claim is premised on the claim that the Firm failed to move for leave to withdraw as counsel or notify Billiard that it was no longer representing Billiard’s interests in the underlying action when Capitol Insurance withdrew its defense coverage, the malpractice in this regard occurred earlier, on December 28, 2012. At the latest, the malpractice claim accrued on or about January 25, 2013, when the Firm served its affirmation in opposition (and alleged letter) to Billiard advising that it was not representing Billiard at the time.[2] Therefore, absent a toll, Billiard had until December 28, 2015, January 12, 2016, or January 25, 2016 to commence this action.
While it is well established that a court may not extend a statute of limitations or invent tolling principles, some tolling provisions are based upon common-law, equitable doctrines *945 (Brown v State of New York, 250 AD2d 314 [3d Dept 1998], citing Roldan v Allstate Ins. Co., 149 AD2d at 32; cf. Shared Communications Servs. of ESR, Inc. v Goldman, Sachs & Co., 38 AD3d 325, 325 [1st Dept 2007] [declining to apply the doctrine of equitable tolling as there was no showing that plaintiff was “actively misled” by defendant, or that it “in some extraordinary way had been prevented from complying with the limitations period”]). Whenever some “paramount authority prevents a person from exercising his legal remedy, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitations has barred his right, even though the statute makes no specific exception in his favor in such cases” (Rodan v Allstate Ins. Co., 149 AD2d at 34; 51 Am Jur 2d, Limitation of Actions § 140 at 711; see also 54 CJS, Limitations of Actions § 86 at 121-123).
For example, and contrary to the Firm’s contention, the statute of limitations may be tolled as against a person unable to bring an action based on a prior ruling (see Brown, 250 AD2d at 319, citing Roldan, 149 AD2d at 32 [“the Statute of Limitations is tolled where a cause of action has accrued, but was ‘temporarily extinguished as a result of an erroneous court order, which was later reversed’ ”]; Coyle v Lefkowitz, 89 AD3d 1054 [2011] [finding that a constructive fraud claim based on a Nov. 24, 2003 entry of an unsatisfied judgment was not time-barred under the six-year statute of limitations; the Nov. 24, 2003 judgment was vacated by an order dated Oct. 2, 2006, which was later reversed on Sept. 9, 2008; thus, the statute of limitations was tolled for a period of approximately 23 months]; cf. Varo, Inc. v Alvis PLC, 261 AD2d 262 [1st Dept 1999] [declining to extend the toll applied to cases where a plaintiff was prevented from bringing suit by court order, where nothing in the Federal False Claims Act (31 USC § 3729 et seq.) prohibited plaintiffs from timely commencing this action]).
Even assuming the earliest date of the alleged malpractice as December 28, 2012, when Capitol Insurance declined coverage and the Firm ceased all action and did not advise plaintiff of same, or when the attorney-client relationship ceased as of December 28, 2012 (which this court does not find), Billiard was subsequently foreclosed from exercising any legal remedy by virtue of the trial court order dated May 7, 2014. Such order excused Billiard’s default, thereby eliminating any actionable injury suffered by Billiard, and suspended the statute of limitations until such injury was revived on September 23, 2015, *946 when the Appellate Division reversed the trial court order finding Billiard in default. In other words, Billiard no longer had a claim for malpractice upon the date of the trial court order. The trial court compelled plaintiff to accept Billiard’s answer, thereby, nullifying Billiard’s default, and Billiard was restored to its pre-default position in the underlying action. At such time, and notwithstanding that the malpractice claim had already accrued, Billiard no longer had a complete cause of action. As the statute of limitations was tolled during the 504 days (or, one year, four months, 16 days) between the time Billiard’s ability to sue was extinguished and subsequently restored, the instant action filed on April 26, 2015 was timely filed.[3]
The Firm failed to establish that the trial court order did not prevent Billiard from maintaining a malpractice claim. Its sole argument in reply, that Billiard failed to cite legal authority demonstrating an applicable toll under the circumstances, is insufficient. Therefore, the Firm failed to establish its entitlement to dismissal on the ground of statute of limitations.
Conclusion
Based on the foregoing, it is hereby ordered that defendant’s motion to dismiss plaintiffs complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, or alternatively, CPLR 214 (6) based on the defense of statute of limitations, is denied.

. The Firm’s reference to exhibit E in support does not include any letter, but instead includes an “affirmation in opposition” to Gershman’s motion for default stating that it never appeared or answered on behalf of Billiard and requesting that Gershman’s counsel be directed to refrain from asserting that the Firm was attorneys for Billiard “in any capacity at anytime.”

. There is insufficient support in the record that the continuous representation doctrine applied beyond January 25, 2013. Under this doctrine, a plaintiff is not obligated to commence an action against its counsel during the period in which counsel continues to represent it in the relevant matter (Glamm v Allen, 57 NY2d 87 [1982]). The “continuous representation toll . . . nonetheless end[s] once the client is informed or otherwise put on notice of the attorney’s withdrawal from representation” (Shumsky v Eisenstein, 96 NY2d 164, 170-171 [2001] [continuous representation doctrine tolled the limitations period for plaintiffs’ malpractice claim until plaintiffs were put on notice of the attorney’s withdrawal from representation]).

. And, even assuming Billiard received Mr. Gash’s letter on or about January 25, 2013 (as contended by the Firm), such assumption does not render this action barred by the statute of limitations.